## Givens *against* M'Calmont.

A mortgagee in possession is chargeable with waste; but what is waste, and what not, as respects the clearing of timber land, must depend upon the particular circumstances of the case.

The principles upon which a mortgagee in possession shall be charged, for what improvements he shall be allowed, and under what circumstances.

WRIT of error to *Crawford* county.

This was an action of ejectment by Samuel Givens and Elizabeth his wife, against Alexander M'Calmont and John Nelson, for the one-seventh of a tract of land which had been vested in fee in Elizabeth, the wife of Samuel Ray. To January term 1803, a judgment was obtained by David Mead against Samuel Ray for 950 dollars; upon which a *fieri facias* issued to April term 1803, upon which personal property was levied, and which was returned, "no sale, by order of plaintiff." On the 12th of March 1803, Ray and wife executed a mortgage to David Mead on the land in controversy, to secure this judgment, which it recited specifically. To August term 1804 William Hays brought suit against Samuel Ray, which was tried in 1808, and a judgment on the verdict in 1809, upon which executions were issued and levied on the land in controversy, which in 1811 was sold to David Mead, and the sale set aside by consent. In 1816 the same was sold again, on the same judgment, to James Herriott, and the proceeds of the sale were appriated by the court to the judgment of David Mead. The title of Herriot was duly vested in M'Calmont, the defendant, in 1826, who was ignorant that the title had been in Mrs Ray, but supposed it had been in Samuel Ray. David Mead took possession of the land in 1813, and he and Herriot and the defendant have been in possession ever since. Previously to 1826 there was very little of the land cleared, but since there have been about thirty acres cleared, and a saw-mill built. The mortgage of David Mead was regularly assigned to the defendant in 1826, when he purchased the land.

The plaintiff offered to prove that in 1811, when Mead purchased at the first sale, he and Ray had a conversation in which it was admitted, that the mortgage was given to cover and secure the debt of Hays, and that the whole amount did not exceed 400 dollars. This evidence was objected to and rejected.

The defendants offered to give evidence of the value of the improvements made upon the land, with a view that they may be estimated by the jury, to be paid by the plaintiff before they turn the defendants out of possession. This was objected to on the ground

[Givens v. M'Calmont.]

that a mortgagee in possession would not be allowed for improvements. The objection was overruled.

The following points put by the plaintiffs and defendants, exhibit the questions which arose in the court below :

Plaintiff's points.

1. That the levy on personal property on the judgment of Mead *v.* Ray, of January term 1803, being undisposed of from any thing that appears on the record, satisfies the judgment, and the debt being paid, the mortgage depending on it is to be presumed paid also, and the plaintiffs having shown a good title to one-eighth part of the land, are entitled to recover.

2. That the appropriation of the money arising on the sale on the judgment of Hays *v.* Ray to the judgment of Mead, on his application, after the death of Ray, is an admission of Mead that he held under the mortgage, and the limitation does not run against the heirs of Ray until that time : that the limitation to them is twenty-one years from that time.

3. That the defendants cannot claim the amount of the value of the improvements made on the land, such as building a saw-mill, blacksmith shop, mill-works, &c., or add them to the amount of the mortgage money, or incumber the estate of the mortgagors, without the consent of them or their heirs.

4. That if the mortgage was not otherwise paid, the plaintiffs have a right to charge the defendants, and those under whom they claim, with the amount of injury done to the estate since they took possession of it in 1813, together with the value of the water right, and the use of the land since that time.

5. That the defendants having issued a *scire facias* on the mortgage, are estopped from alleging that the plaintiffs are barred by the limitation from recovering.

6. That it having been shown that the defendants and those under whom they claim took possession and cut and sold timber off the land, the defendants must give up the possession until the amount due on the mortgage, if any thing, is ascertained in the *scire facias* on the mortgage.

7. That if the jury believe there was waste committed by the defendants, or those under whom they claim, of the mortgaged premises, the extent of the injury to the property must be deducted from the amount of the mortgage money due, if any.

8. That four of the heirs having transferred their interest to Alexander M'Calmont, one of the defendants, the plaintiffs are not bound to pay the whole mortgage money, and the plaintiffs claiming but one share of eight are entitled to recover, subject to the payment of the one-eighth part of the balance due on the mortgage, if they find there is any due.

9. That if waste was committed on the premises by the defendants holding under the mortgage, by cutting off the timber from twenty or thirty acres of the land, and burning or disposing of the

same, the plaintiffs are entitled to recover the possession, whether the mortgage money has been paid or not.

10. The plaintiffs are entitled to a credit on the mortgage to the value of the personal property levied on the execution, the defendants not having shown what became of it.

Defendant's points.

1. That if the jury believe that the mortgagee and his assignees have been in possession of the premises for twenty-one years, and during this time the mortgagors or their heirs have never entered and redeemed the premises, they are, by lapse of time, precluded from redeeming or entering under said mortgage.

2. That if any money remained unpaid on the mortgage, the plaintiffs, being heirs of the mortgagors, must pay or tender such money so unpaid, before they can bring their action of ejectment against the defendants in possession under the mortgage.

3. The plaintiffs claiming to be allowed on the mortgage against defendants, with the use of the premises and cutting timber on it, the defendants are entitled, in satisfaction of this claim, to be allowed for their improvements.

A verdict and judgment were rendered for the defendants.

*Galbraith,* for plaintiff in error.
*Banks* and *Pearson,* contra.

The opinion of the Court was delivered by

HUSTON, J.—The defendant is admitted to be an innocent purchaser for a valuable consideration. Where a judgment is in full force as appears by the docket, and the plaintiff is proceeding to collect the amount, if the defendant alleges the debt or part of it is paid, he should apply to have the execution stayed, and to be let in to have his payments allowed ; if he does not do this, a court would hardly let in a defendant who stood by and saw his land sold, to prove, at the end of twenty years, that the debt had been paid before the sale. But suppose he could have proved that this was all a contrivance between him and Mead to have the land sold and the money applied to Mead's judgment, and had gone further, and proved that it was to be bought in for the use of Ray, but the purchaser had sold it to an innocent purchaser for a fair price, that purchaser would hold the land from Ray and his heirs. Lazarus *v.* Bryson, 3 *Binn.* 54, is in point. This testimony, in a cause between third parties, went to set aside a judgment never attempted to be directly impeached. The court in 1816 decreed the amount levied on Ray's execution to be paid to Mead's judgment. This testimony went to reverse that decree, and both these to affect a third person, an innocent purchaser under regular legal proceedings.

The only other point contested in the cause arose from the fact that M'Calmont had cleared thirty acres, which the plaintiff called

[Givens v. M'Calmont.]

committing waste, by cutting down and burning and destroying timber ; and from his having erected a saw-mill, and from the same dam carried the water to a grist-mill, built just over the line on his other land: and the plaintiff contended that the rents, before and after these improvements, must be applied to discharge the mortgage.

In England, and in some of these states, perhaps, it seems to be usual that the mortgagee enters into possession ; and the books are full of cases as to what allowances for expenses, repairs and lasting improvements shall be made to such mortgagee in possession. These cases do not exactly agree : in some, the cost of beneficial and lasting improvements has been added to the debt, to be paid before the mortgagor can redeem ; but in the better opinions, it would seem, the allowance has been confined to *repairs,* though rebuilding a kitchen, become so ruinous as to be useless, was allowed, as within the term repairs, though building one where there had been none before, would not have been allowed. See 3 *Powell on Mortgages* 956, and the following pages and cases cited. In several of the states of the United States the allowance seems to be confined to repairs, and not to extend to improvements. Everywhere the mortgagee in possession is chargeable for waste, and in England, particularly, for timber cut. There every part of every tree will bring cash. In a country covered with timber, which cannot be sold, and must be removed before any person can make any use of the land, it would seem the law, as to timber, must be otherwise. In many parts of Pennsylvania you can purchase land for 2 dollars per acre, or less, and it will cost from 4 to 10 dollars per acre to clear it so as to be fit for cultivation. Thus in Cable v. Moore, 1 *Johns. Chan.* 387, we find a mortgagee claiming to be allowed to add the cost of clearing land to his debt, under the name of improvement. In the case before us it is asked to charge it against the mortgagee in possession, as waste. In this state no rule which will apply to every tract can be laid down. In some parts of the state it would be difficult to find a farm in which a mortgagee in possession could cut more timber than was necessary to be used on the farm, without committing waste ; but in places where many farms have less than ten acres in the hundred cleared, in fact, have not enough in cultivation to support the family and stock, it is not waste to clear land, though in doing so the timber is collected in heaps and burnt. The situation and circumstances of each case must then be taken into view. If a prudent owner would clear off the timber ; if doing so increases the value of the tract ; if there is so much covered with wood that more ought to be cleared each year for many years, it cannot be waste.

In South Carolina they seem to have adopted the English practice, " all just allowances are to be made to the defendant for necessary expenses and repairs, and management and improvement, after which the proceeds are to be applied, in the first place, to the interest due," &c., &c. 2 *M'Cord's Chan.* 465.

In Massachusetts we find it said to have been decided, that a

[Givens v. M'Calmont.]

mortgagee in possession shall not be allowed for improvements; 2 *Pickering* 505; but it was a *dictum* in an action for mesne profits.

In 5 *Pickering* 259, 270, we find a case on a mortgage. The mortgagee had leased the farm, and, without any fault of his, lost the rent of one year: he was not charged with the rent of that year, but he was charged for the rent of the other years. He claimed an allowance for an aqueduct to bring water to the farm: this was disallowed at first, but on proving that it was necessary, the decree was changed, and it was allowed.

In 1 *Johns. Chan.* 387, before cited, the chancellor refused to allow for improvement in clearing land, and decreed the mortgagee " to be charged with the rents and profits received, except such as arose exclusively from his own improvements; to be allowed for necessary expenses in repairing, if any, but not for improvements in clearing land." I should agree to this, with the addition, that if the mortgagee had cultivated the land after it was cleared, for so long a time as fully to reimburse his money expended, he ought from thenceforward to be charged with the rent for what he had cleared. So here, if M'Calmont has used the land that he cleared and the mill he built, so long as to pay him, or shall have, when the account is taken, used them longer than sufficient to pay him for his expenses in building the dam and mill, he shall be charged for the rent even of his own improvements, from the time when he was paid the expense of those improments. He must be charged with the rent of the farm in the state it was when he entered, from the time he entered. If the jury find that the clearing land was an injury to the farm, he must be charged for the waste; if not an injury, he is not to be charged for waste.

In the middle and western counties of this state, mortgagees have seldom entered into possession, and such cases have not come into consideration much. We have adopted what seemed the most just of the decisions of other states. The cases arising on this subject are very various in their circumstances, and we do not pretend that this or any other rule can be of proper application to all possible cases.

The other matters discussed in the court below, have not been alleged as errors, and were not errors. As the plaintiff cannot recover without having tendered the amount due on the mortgage, it may be most prudent to ascertain the amount in the *scire facias* brought on the mortgage; and unless in that suit the debt is found to have been paid, the plaintiff cannot recover in this action. As the judge did not give the rule as to the charging rents, as here laid down, the judgment on this account is reversed.

Judgment reversed, and a *venire de novo* awarded.