## BRAWDY *v.* BRAWDY.

The change of possession, under a parol sale, must be notorious and continued. Hence, where the tenant attorned under instructions, and made a new bargain with the vendee, but when the rent fell due was directed to pay it to the vendor, who was his debtor, which he did by allowing him credit for the amount, and then quit possession, giving notice to the vendee, and the vendor entered and remained in possession, the case was held to be within the statute of frauds, although the location and boundaries of the land, and the price and partial payment thereof, were clearly proved.

In error from the District Court of Allegheny.

*Nov.* 9. Ejectment. The question was, whether the plaintiff had given sufficient evidence of the transfer of possession to go to the jury, on the question of an alleged parol sale. It appeared that John Brawdy owned the land in dispute, which was occupied

O

by his tenant, McGibbeny. He proved that, in 1840, John Brawdy and the plaintiff, Moses Brawdy, were together at the house of the latter. Shortly afterwards John Brawdy told the witness he had sold that part of the lot witness lived on, which lay east of the Brownsville road, to Moses, for $900. The land was surveyed in the presence of the parties and others, and the witness described the lines run. Afterwards, John told witness if he wanted to live any longer on the lot, he must rent it from Moses, and a bargain with him was concluded, under which the occupation was continued by McGibbeny for one year. When he went to pay the rent to Moses, he told him to settle with John. McGibbeny said he had claims against John, which Moses said he knew. A settlement was thereupon made with John, by giving him a credit for the amount of the rent. At the end of the year, McGibbeny gave notice to Moses, and on quitting possession, John entered and remained in possession.

The plaintiff also proved the preparation of a deed, pursuant to verbal instructions, by John; payment of part of the purchase-money to him, and also to his vendor, of a part that remained unpaid at the time of the alleged sale. He also proved the admissions by John, that the sale had taken place, and proved the survey already mentioned. Taxes were paid by the tenant, and partially receipted for to Moses, but the assessment continued in the name of John.

The defendant was a son of John Brawdy, and also had title under a sheriff's sale to him, under a judgment against John, nearly three years after the alleged sale to plaintiff. Many exceptions were taken to his evidence of title, but are immaterial to the point on which the cause turned. LOWRIE, J., directed a verdict for the defendants, saying he decided the case as upon a demurrer to evidence.

*Woods*, for plaintiff in error.

*McCandless*, contrà.

*Dec. 4.* GIBSON, C. J.—An ejectment to enforce specific performance of a purchase, being with us a substitute for a bill in equity, is to be affected with all those considerations that would affect a bill for that purpose in the contemplation of a chancellor. With him the enforcement of the contract is not of right, but of grace; and he withholds the exercise of his extraordinary power wherever there is a doubt about the facts on the basis of which it

is invoked. He invariably refuses to decree on the uncorroborated testimony of a single witness, in opposition to even the defendant's interested answer on oath, though it cannot be read as evidence for him at the hearing. Where there is oath against oath, though one of the parties has sworn under the pressure of interest, he requires something still to turn the scale, as in Only *v.* Walker, 3 Atk. 407, in which the defendant's denial of the agreement, in answer to a bill for specific performance of it, was overborne by the testimony of a single witness, only because it was corroborated by evidence of the defendant's confession. So in Morphett *v.* Jones, 1 Swans. 172, where the testimony of the witness was seconded by evidence of part execution. But in Pilling *v.* Armitage, 12 Ves. 78, in which both the answer and the opposing testimony of the witness were corroborated by circumstances, Lord Eldon refused to execute the agreement, because the evidence of it was *in equilibrio.* All this shows that a chancellor weighs these matters in nice scales; insomuch that it was held in the East India Company *v.* Donald, 9 Ves. 275, that he will not decree against the answer, even on the corroborated testimony of a witness, without giving the defendant an opportunity, should he desire it, to try the question at law, and this too on terms more favourable than would be afforded by ordinary rules of evidence, which would preclude his answer from being read on the trial of the issue. But in Savage *v.* Brocksopp, 18 Ves. 337, the answer was ordered to be read, for the purpose of contrasting it with the testimony of the witness. But even where a chancellor sends such an issue to a jury, it is only as an advisory council and in ease of his conscience; for he may direct any number of new trials, or decide at once in opposition to the verdict, as was done in Armstrong *v.* Armstrong, 3 M. & K. 45. These authorities show that the case must be proved to the entire satisfaction, not only of the jury, but the chancellor also; and have not our courts, in giving effect to principles of equity through the same medium, the same legitimate control over the results of the evidence? It would be fatal to a systematic administration of the relief claimed, if they had not. If the jurors were the uncontrolled arbiters of the facts, we should indeed have what is aptly called, by Mr. Justice Grier, in Haslet *v.* Haslet, 4 Watts, 464, a hybrid species of equity. It is true, that the verdict, in an ejectment like the present, may be well found on the oath of a single witness, because there is no opposing oath of the defendant; and it is also true that, unlike a chancellor, the court cannot give judgment *non obstante veredicto;* but rather than give judgment

in conformity to it, when found on insufficient evidence, it would be proper to grant new trials for ever; and to save the vexation of such useless litigation, it is equally proper to indicate beforehand the measure of evidence a chancellor would require. Was there such a measure here? If there was not, the cause was properly taken from the jury.

The plaintiff was bound, in the first place, to prove, not only the existence of the contract, but the terms and conditions of it, which seems to have been sufficiently done by the testimony of the vendor's tenant, McGibbeny, who swore that his landlord, John Brawdy, under whom both parties claim, told him he had sold the lot in contest to his brother Moses, the plaintiff, for $900; and that if he, the tenant, desired to live longer on it he must rent it from Moses. This is corroborated by the fact that the ground, as it had been described to the witness by the vendor, was subsequently laid off by a surveyor in the presence of the parties. There was no written memorandum of the bargain, but that is not essential. The case of Symondson v. Tweed, Prec. in Ch. 374, in which it was said that wherever the court had decreed specific performance, the contract had been made out from letters containing the stipulations in it, is no longer to be regarded as authority, at least in Pennsylvania, where the whole of the English statutes has not been enacted. A contract, thus put in writing, would satisfy even the fourth section of that statute without aid from part performance. Nor is more respect to be had to the doctrine of Lord Alvanley in Forster v. Hale, 3 Ves. 712, that the courts had gone too far, after proof of part execution of some agreement, in admitting parol evidence of the contents of it; for it is the constant practice in these latter days, to enforce such contracts on parol proof of their terms. But taking the agreement to have been well proved, was there sufficient proof that it had been partly executed?

The facts are these:—McGibbeny, the tenant of John, the vendor, was told by him that if he wanted to live on the lot any longer, he must rent it from Moses, and he did so; but offering to pay Moses the rent at the end of the year, he was told by him to settle with the old man, (John,) and he did so. McGibbeny, when going to quit, gave notice to Moses; but when he moved out, John moved in, and has remained ever since in the actual possession. Moses paid a considerable part of the purchase-money; but it is settled that payment alone does not constitute part-performance. Now it is observable that there was no notorious transfer of the actual possession, such as was required in Pugh v. Good, 3 Watts &

Serg. 56, in which an actual entry by the vendor's agent, to deliver possession in the character of the vendee's lessee, was held to be part-performance, on the ground that the execution of the authority resulted in a visible, palpable, and notorious transfer of the actual possession in performance of the contract.   In the case before us, there was no act of notoriety whatever.   Even attornment by the vendor's tenant, were it enough to satisfy the statute, ought to be a formal, public, and explicit one.   A parol sale to a tenant in possession is within the statute, because there is no change of possession in execution of the contract; nor is there any perceptible change effected by an attornment.   In Pugh *v.* Good, the publicity of the actual transfer was compared to the notoriety of the ancient feudal investiture ; and it was thought for that reason to be a sufficient safeguard against perjury : but there is no such publicity in a mere act of attornment.   It was on similar ground we held, in Galbreath *v.* Galbreath, 5 Watts, 146, that a tenant in common could pass his estate to his co-tenant, only by a written conveyance or by a parol sale, accompanied with visible, distinct, and exclusive possession.   Here, however, the evidence leaves it in doubt whether there had ever been an attornment.   The vendor told his tenant to rent from the vendee, and he did so ; the vendee told him to pay the rent to the vendor, and he did so ; and the vendor formally resumed the possession.   The uncertainty about the true state of the transaction indicates that it was intended to confound the vendor's creditors, and the judge therefore very properly directed that the evidence had failed to prove a case proper for the interposition of a chancellor.

Judgment affirmed.