# Harper's Appeal.

1. Gubbings conveyed to Harper by absolute deed, and about the same
time they agreed in writing that at Gubbings' request within three years,
Harper would reconvey, Gubbings paying him an advance of $500.  *Held*,
that the transaction was a mortgage.

2. Gubbings did not demand a reconveyance for nine years: *Held*, that
he was not barred by the 6th sect. of Act of April 22d 1856 (Limitation).

3. The 6th sect. of Act of 1856 construed.

4. Whenever there is an advance of money to be returned within a speci-
fied time upon the security of an absolute conveyance, it is a mortgage,
whatever the form adopted or the understanding of the parties.

5. Harper on the execution of the deed took possession and after the
expiration of the three years made permanent improvements, which the
master found to be reasonable: *Held*, that he should be allowed for those
improvements.

6. Reason and justice are controlling guides in equity where no positive
rule of law intervenes.

7. When property is held avowedly as a pledge, a mortgagee in possession
should not be allowed for costly and permanent improvements, without the
consent of the mortgagor.

[Harper's Appeal.]

8. Mortgagee in possession should be allowed for such repairs as are proper to preserve the estate from dilapidation, without holding him to proof of absolute necessity.

9. Principles on which a mortgagee in possession should account, stated in this case.

10. Givens *v.* McCalmont, 4 Watts 460 ; Gregg *v.* Patterson, 9 W. & S. 197; Dilworth *v.* Sinderling, 1 Binney 488 ; Beeson *v.* Beeson, 9 Barr 279, remarked on.

February 24th 1870.   Before AGNEW, SHARSWOOD and WILLIAMS, JJ.   THOMPSON, C. J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Philadelphia:* In Equity : No. 258, to January Term 1870.

On the 12th of April 1867, Hannah Gubbings and James Gubbings, executors, &c., of John Gubbings, deceased, and others, devisees and heirs of said deceased, filed a bill against James Harper.

The bill set out :—

1. That John Gubbings was in March 1858 the owner of two messuages, &c., and a lot of ground in Philadelphia, subject to a mortgage of $1500, and that the property was worth $12,000.

2. That the premises being about to be sold by the sheriff, he applied to the defendant for a loan of money to pay the debt and costs for which the property was about to be sold, and that the defendant agreed to advance to Gubbings $7000, on receiving a deed for the premises, subject to the $1500 mortgage, the defendant at the same time agreeing to execute an agreement to reconvey to Gubbings within three years on the payment of $7500.

3. That Gubbings, for the consideration of $7000, executed to the defendant a deed for the premises, dated March 18th 1858, and at the time of the delivery of the deed, March 19th, the defendant delivered to Gubbings an agreement, stipulating to reconvey the premises to him in three years, on the payment of $7500, the costs of the conveyance, and whatever Harper may have paid for insurance, &c.

4. That the transaction was a loan of money on the security of the premises, and not a sale to the defendant, and that the deed and agreement were one transaction, and together constitute a mortgage.

5 and 6, set out the death of Gubbings, on the 22d of December 1858, leaving a will, and stated the disposition of his estate under his will, the names of his devisees, &c.

7. That the plaintiffs had applied to the defendant for a reconveyance, refused to execute one, he averring that the transaction was not a mortgage, but that he was absolute owner of the premises.

The prayers were : that the transaction may be decreed to be a mortgage; that an account be taken of the rents, &c., received by the defendant; and of the money loaned by him to Gubbings,

with interest; and that the defendant be ordered, on payment to him of the balance found to be due him, to deliver to the plaintiffs a deed according to their respective interests, &c.

The defendant answered:—

2. That Gubbings applied to him for a loan, which he declined to make, but agreed to purchase the property, and Gubbings sold it to him on the 18th of March 1858 for $7000, subject to the mortgage for $1500; that he had continued to hold the premises as absolute and only owner. He denied that he agreed to advance or did advance the $7000 as a loan; or that he did at the date of the deed, or at any time previously, agree to reconvey the premises in three years.

3. That he did not execute the agreement on the 19th of March as its date purports, but it was executed and delivered about October 1st 1858; it was made on the request of Gubbings to have the privilege of repurchasing the premises at an advance of $500 —the agreement was ante-dated, that the three years for Gubbings' purchase might be from its date.

4. Denied that the deed and agreement were one transaction.

7. No application had been made for a reconveyance until within three or four months; Gubbings's option expired March 19th 1861, since when the defendant has paid the $1500 mortgage, has improved, repaired and rebuilt the property at a cost of about $5000—no objection has been made by the Gubbings to the expenditures for repairs, improvements, &c.

A replication was filed and an examiner appointed.

The defendant gave evidence by Joseph Barrett that in the latter part of 1858, Gubbings told him that he had sold the property to the defendant for the purpose of buying a brick-making establishment, and was going into the brick business; also other declarations by Gubbings that he had *sold* to the defendant. He gave in evidence a lease, dated November 20th 1863, from defendant to one Johnson for six years at $750 per annum, with an agreement that Johnson should put up certain improvements, be paid the cash outlay, pay 6 per cent. on the outlay in addition to the rent; and would also, at his own cost, put up other improvements of a value not less than $1000.

He gave in evidence also a lease from Gubbings to Johnson, for seven years, from January 18th 1855, for a rent of $410— taxes and repairs to be kept up by the tenant.

He gave evidence that the agreement was executed October 1st 1858, and ante-dated that Gubbings might have three years from the date of his sale to pay back; that there was no agreement at the time of the sale to reconvey on any terms; also of the value of the property at the time of the sale to him and its increased actual value and in the rent by reason of the improvements.

The plaintiff gave evidence for the purpose of showing that

the agreement was executed in March 1858; and also the value of the premises; also declarations of the defendant that he had advanced money to Gubbings who was to have the privilege of returning it within a certain time.

The court (Allison, P. J.) delivering the opinion, decreed:—

1. That the·conveyance dated March 18th 1858, executed by John Gubbings to the defendant, together with the agreement dated March 19th 1858, executed by John Gubbings and the defendant, created only a mortgage of the premises mentioned in the bill, and that the plaintiffs are now entitled to redeem the same on the payment of what is justly due to the defendant.

2. That it be referred to John J. Ridgway, Esq., as master, to take an account between the plaintiffs and the defendant, to ascertain what amount of money is due from the plaintiffs to the defendant.

3. That upon the payment or tender to the defendant, of the sum found due upon such accounting, he do thereupon convey to the complainants, the said premises mentioned in the bill, according to their several and respective interests therein under the will of John Gubbings.

The master reported, charging Gubbings's estate with $20,-579.88; this sum included charges for repairs and permanent improvements; he credited the estate with rents amounting to $8581.86, showing a balance amounting to $11,998.02 due to the defendant.

On exceptions by the plaintiffs, the court (Allison, P. J.) struck out all the charges for repairs and permanent improvements, and decreed that the balance due to the defendant was $8450.20, and that upon the payment of that sum, with interest from November 19th 1869, and the premium or deposit (and interest thereon from the payment of the same) the defendant may have made to effect an insurance upon the premises mentioned in the plaintiffs' bill, and the costs of the transfer of the policies of insurance, the defendant execute and deliver to the plaintiffs at their costs for the conveyance, including the necessary stamps, a deed in fee simple, according to their several and respective interests therein under the will of John Gubbings, deceased, for the said premises mentioned in the pleadings, clear of all encumbrances except taxes, water-rent and municipal encumbrances hereafter accruing: and that defendant pay to the plaintiffs all rent of said premises received by him since November 19th 1869, and the costs of this suit.

The defendant appealed to the Supreme Court, and assigned for error, that the court erred:

1. In decreeing the deed from Gubbings to Harper, dated March 18th 1858, and the agreement dated March 19th 1858, to be a mortgage.

2. In disallowing Harper the money he paid for repairs.

3. In disallowing him the money he paid for improvements.

4. In ordering that Harper reconvey the property to appellees.

*A. Briggs*, for appellant.—In determining whether the transaction was a mortgage the intention of the parties must govern: Colwell *v.* Woods, 3 Watts 188; Mellor *v.* Lees, 2 Atk. 495; Wharf *v.* Howell, 5 Binney 503; Stoever *v.* Stoever, 9 S. & R. 434; Kerr *v.* Gilmore, 6 Watts 405; Jacques *v.* Weeks, 7 Id. 261; Rhines *v.* Baird, 5 Wright 263; Todd *v.* Campbell, 8 Casey 250. These proceedings are barred by the Act of April 22d 1856, § 6, Purd. 654; they were too late in demanding a reconveyance: Warfield *v.* Fox, 3 P. F. Smith 386.

*G. Junkin*, for appellees.—As to the transaction being a mortgage: Wheeland *v.* Swartz, 1 Yeates 579; Wharf *v.* Howell, 5 Binney 499; Stoever *v.* Stoever, 9 S. & R. 434; Johnston *v.* Gray, 16 Id. 361; Colwell *v.* Woods, 3 Watts 188; Kerr *v.* Gilmore, 6 Id. 405; Kunkle *v.* Wolfersberger, Id. 126; Jaques *v.* Weeks, 7 Id. 261; Hiester *v.* Madeira, 3 W. & S. 388; Rankin *v.* Mortimere, 7 Watts 372; Brown *v.* Nickle, 6 Barr 390; Woods *v.* Wallace, 10 Harris 171; Reitenbaugh *v.* Ludwick, 7 Casey 131; Wilson *v.* Shoenberger, Id. 295; Kellum *v.* Smith, 9 Id. 158; Houser *v.* Lamont, 5 P. F. Smith 311; Spering's Appeal, 10 Id. 199.

As to repairs and lasting improvements: 1 Kent Com. 166, 167; 2 Story Eq. § 1016; Sandon *v.* Hooper, 6 Beav. 246; Quinn *v.* Brittain, 1 Hoff. Ch. Rep. 353; Clark *v.* Smith, Saxton's Rep. 121; Moore *v.* Cable, 1 Ch. R. 387; Russel *v.* Blake, 2 Pick. 505; Reed *v.* Reed, 10 Id. 398; Calcott *v.* Brown, 2 Hare Ch. R. 144; Bell *v.* Mayor, &c., 10 Paige 49; Dougherty *v.* McColgan, 6 Gill & John. 285; Givens *v.* McCalmont, 4 Watts 463; Wykoff *v.* Wykoff, 3 W. & S. 486; Gregg *v.* Patterson, 9 Id. 198.

The opinion of the court was delivered, July 7th 1870, by

SHARSWOOD, J.—Accepting the opinion of the court below as the report of a master upon the evidence, we see no plain mistake in the conclusion at which they arrived, that the agreement of March 19th 1858 was cotemporaneous with the deed of March 18th 1858, from Gubbings and wife to Harper. Without very clear and persuasive evidence that the sale was an absolute one, and the agreement to reconvey a subsequent, distinct and independent contract, we must treat the transaction as a mortgage. Such, undoubtedly, is the result of the authorities in this state: Colwell *v.* Woods, 3 Watts 188; Kerr *v.* Gillmore, 6 Id. 405; Jaques *v.* Weeks, 7 Id. 261; Brown *v.* Nickle, 6 Barr 390; Reit-

[Harper's Appeal.]

enbaugh *v.* Ludwick, 7 Casey 131; Wilson *v.* Shoenberger's Ex'rs., Id. 295.

Nor does the limitation contained in the 6th section of the Act of April 22d 1856 (Pamph. L. 533), create any bar to a bill or action to redeem. It is not within the words nor the spirit of any one of the cases enumerated in that section. It is not a proceeding "for a specific performance of any contract for the sale of any real estate." If we regard the form of the agreement only it is indeed such, and it may be urged with some plausibility, that so far as the vendor is concerned, equity accomplishes all substantial results by holding time not essential, and therefore decreeing a conveyance upon payment of the stipulated price for the repurchase. But that is not the light in which it is regarded. A variance between the amount originally advanced and the price to be paid on the repurchase will not change the result. Whenever there is in fact an advance of money to be returned within a specified time upon the security of an absolute conveyance, the law converts it into a mortgage, whatever may be the form adopted, or whatever may be the understanding of the parties. This is grounded on a policy of long standing in courts of equity and in this state, of law acting upon principles of equity. It is not "a contract for the sale of real estate." It could not be pretended that these words of the statute would apply to the case of a mortgagee in possession under an ordinary mortgage, with a condition to be void upon the payment of the mortgage-money within a certain time; yet such is the legal effect of an absolute deed with an accompanying defeasance or agreement to reconvey, when it is established to be a mere security for the loan. It is certainly not "an action for damages for non-compliance with any such contract," nor can it by any canon of construction be brought within the next succeeding clause, "or to enforce any equity of redemption after re-entry made for any condition broken." The complainants below are asking, indeed, to enforce an equity of redemption, but it is not "after re-entry made for any condition broken." There was no condition on the breach of which any re-entry was required to be made, nor in point of fact was there any re-entry. Upon the execution of the deed the grantor, as the legal owner, took possession, as an ordinary mortgagee might have done; he could have recovered possession in an action of ejectment, if it had been withheld. The penman of this law most probably had in his mind the common case, in Philadelphia at least, of a re-entry for condition broken under a ground-rent deed, containing a clause for such re-entry for non-payment of rent. It may, and no doubt does, comprehend other cases, but it cannot be extended to the equity of redemption of a mortgagor. Nor is this a proceeding "to enforce any implied or resulting trust as to realty." The trusts here meant are evidently those

excepted from the provision of the 4th section of the same act, invalidating parol declarations of trusts, namely, " when any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise, or result by implication or construction of law, or be transferred or extinguished by act or operation of law." Mortgages are clearly not within these words. But, besides all this, where a mortgagee is in possession when does " the equity or trust accrue with the right of entry," from which the limitation begins to run ?   Evidently not until the mortgagee has been repaid either from the rents and profits or by the mortgagor.   No question, therefore, arises in regard to the operation of the act, even if it could be held to be applicable.   The time has not even yet begun to run.

There was no error then in the decree to account.   But we do not concur in the view taken by the learned president of the court below as to the principles upon which the account should be settled. We think that under the facts and circumstances of the case the defendant should have been allowed the credits claimed and reported by the master for the repairs and improvements made upon the premises during his possession.   However it might be, if he were a mortgagee under an ordinary formal mortgage, the rule ought not, we think, to be the same where by the express agreement of the party seeking equitable relief he took and held possession as absolute owner.   There is a manifest distinction between the two cases in reason and justice, which are controlling guides in a court of equity where no positive rule of law intervenes.   It may be politic, wise and just to adopt a strict rule of accountability in regard to one who holds the property of another confessedly as a pledge merely.   He ought not to be allowed for permanent and costly additions and improvements made without the consent of the mortgagor, but only for such repairs as were proper and necessary to preserve the estate from dilapidation and decay, not even here, however, holding him to the proof of absolute necessity.   There is reason to say that the real beneficial owner shall not be subjected to heavy charges, and in effect perhaps improved out of his estate by one who has no interest in it beyond that of security for his loan, and thus indefinitely prolong the period of final redemption, if not destroy it entirely.   Chancellor Kent remarks, indeed, that "all the cases agree that the mortgagee is to be allowed the expense of necessary repairs, and beyond that the rule is not inflexible; but it is subject to the discretion of the court, regulated by the justice and equity arising out of the circumstances of each particular case:" 4 Kent's Com. 167 note.   The only case in this state in which the question appears to have been discussed and considered is Givens v. McCalmont, 4 Watts 460.   The rule is not laid down there very positively, although Judge Huston states that "in the better opinions

14 P. F. SMITH—21

it would seem the allowance has been confined to repairs;" and from the judgment we may conclude that the mortgagee is not to be credited for permanent improvements, but at the same time he is not to be charged with the increased rents received in consequence of his expenditures of that character. But that was the case of a mortgagee in possession under an ordinary mortgage, with the clear understanding that the equitable interest was in the mortgagor. Upon the evidence in this case, however, it is indisputable that both parties understood and agreed that the transaction was not a mortgage but an absolute sale. The admission of Harper, given in evidence against him by the complainants, shows that he so understood it. Gubbings declared the same thing on various occasions to Barrett, a witness of defendant, and to Wilson and Cooper, witnesses produced on behalf of the complainants. It is true, that in construction of law it mattered not what their understanding was—it was a mortgage. But when the mortgagor comes into a court of equity, asking its aid and interposition, it is certainly an element to be taken into consideration in determining the equity which he shall be required to do as the price of its assistance, that defendant with his express assent took possession of the estate, with an agreement to reconvey it to him at a certain fixed time and for a certain sum, and with no agreement to account in the mean time.

A well-read lawyer would have informed Mr. Harper that notwithstanding all this he was only a mortgagee, but not one layman out of a hundred is acquainted with the refined distinction between an agreement to reconvey cotemporaneous with the deed and a distinct and independent contract to the same effect made subsequently. Gubbings in effect authorized Harper to act as absolute owner: he should be held to have consented to his acts as such: and therefore in the settlement of the account, Harper should be treated as the general agent of Gubbings to act in the premises according to his best discretion. There is not a single spark of evidence to show any fraud, oppression or want of good faith, in Harper which should induce a court of equity to withhold from him its protection as an honest trustee acting prudently and for the best. The improvements he made were not capricious, costly and extravagant, but reasonable, proper and beneficial, increasing the actual value of the estate to the full extent of their cost if not much beyond. The learned judge below relied upon Gregg v. Patterson, 9 W. & S. 197, where a tenant in common, though believing himself sole owner, had made lasting and valuable improvements, yet he was held not to be entitled to credit for them against his co-tenant. But that was a case where one of two tenants in common, both claiming an equitable title under a vendee, paid the balance of the purchase-money, took a deed to himself, went into possession and made the improvements. That case

was rightly decided under its circumstances, but it is questionable whether the decision would not have been different had it appeared that he had taken the deed to himself and gone into possession as sole owner with the knowledge and consent of his companion; in other words, if the mistake had been mutual. Cases more apposite to that in hand are Dilworth's Lessee v. Sinderling, 1 Binney 488, and Beeson v. Beeson, 9 Barr 279. In the former a sum of money was raised for the benefit of a poor clergyman and his family and placed in the hands of trustees "to be by them laid out in the purchase of a small piece of ground, or in such other manner as to them should seem best." The trustees bought a tract of about 63 acres and built a house upon it. In an ejectment by the cestuis que trust they were allowed a credit for their expenditures. Tilghman, C. J., said: "If he (the trustee) had laid out the money in improper buildings, it would have been but reasonable to throw part of the expense on him. But that was not the case. He made no other than plain solid buildings, very necessary for the land, and by which its value has been greatly increased." Beeson v. Beeson was the case of a purchase by an executor at an Orphans' Court sale, which was held not to be void, but voidable by the devisees or heirs, and to fasten upon the purchaser the character of a trustee. Mr. Justice Bell, after referring to the distinction between positive fraud, which by way of punishment deprives the purchaser of the land bought without remuneration, and the effect attributed by policy to legal fraud, adds: "Indeed courts of equity have not confined the doctrine of remuneration or lien for repairs and improvements to cases of agreement or purchase. It is of general application and is extended to all cases where the party making the repairs and improvements has acted bonâ fide and innocently, and substantial benefit has been conferred on the owner: so that *ex æquo et bono*, he ought to pay. As where—and the illustration is directly apposite now—a party lawfully in possession, under a defective title, has made improvements, if relief be asked in equity by the true owner, he will be compelled to allow for the improvements: Story's Eq. § 1237; Robinson v. Ridley, 6 Madd. 2; Attorney-General v. Baliol College, 9 Mod. Rep. 411. Of this Dilworth v. Sinderling, 1 Binney 488, furnishes a signal instance." And see Jackson v. McGinness, 2 Harris 334, where Beeson v. Beeson is cited and approved. The equity of the executor, who took the estate supposing himself absolute owner, but was converted into a trustee by construction of law, was no stronger than was that of the defendant here, who took possession under an absolute deed with an agreement to reconvey, but who by a similar construction of law was converted into a mortgagee. If anything Harper's equity is better: for Gubbings, the mortgagor, was *sui juris* competent to contract and manage his own business, and

[Harper's Appeal.]

agreed that he should take the estate as absolute owner. It is only upon the ground of a general policy for the protection of needy debtors from the oppressive demands of their grasping creditors, that the principle has been established that such a transaction shall be regarded in equity as a mortgage, and that once a mortgage, always a mortgage. Will it be equitable under such circumstances to decree a reconveyance of the property increased in value by substantial and valuable improvements and repairs at a large expenditure of money in the most perfect good faith without any allowance therefor? Such a result would, in our judgment, be in the highest degree inequitable, and not in accordance with the liberal principles upon which courts of equity proceed in analogous cases.

Nor do we think it a sufficient reason for striking out the credit for a large portion of what was strictly repairs that the leases contained covenants by the lessees to repair, and in one instance that all improvements and alterations needed should be made at the tenant's expense. The repairs were reasonable and beneficial and such as a provident owner would have made. Such covenants are usually inserted that the owner may hold the rod in his own hands and have no unprofitable contests with the tenants. If the repairs were left to the tenant they would generally be such only as would be necessary to keep the premises tenantable and prevent them from falling into dilapidation and decay. It is not a reasonable presumption, for not in the ordinary course of things, that Mr. Harper would have made these repairs if the tenants were able and willing to do so.

Our views then accord with those of the master below in the settlement of the account, at least so far as the several items are before us on this appeal, and the decree must be modified accordingly.

Decree reversed, and now it is ordered and decreed that upon the payment by the plaintiffs below to the defendant of eleven thousand nine hundred and ninety-eight dollars and two cents ($11,998.02,) with interest from this date, and the premium or deposit (and interest thereon from the payment of the same) the defendant may have made to effect an insurance upon the premises mentioned in the plaintiffs' bill, and the costs of the transfers of the policies of insurance, the defendant execute and deliver to the plaintiffs at their costs for the conveyance, including the necessary stamps, a deed in fee simple according to their several and respective interests therein under the will of John Gubbings, deceased, for the said premises mentioned in the pleadings, clear of all encumbrances except taxes, water-rent and municipal encumbrances accru-

[Harper's Appeal.]

ing after November 19th 1869, and that defendant pay to the plaintiffs all rent of said premises received by him since November 19th 1869, and the costs of the suit in the court below.    Each party to pay his or their own costs in this appeal.