# Jackson *versus* Payne.

1. Parol evidence is not admissible to contradict or vary a written in-
strument, where there is neither allegation nor proof of any fraud,
accident or mistake in its execution, nor of any promise then made as
to its use which was subsequently violated.

2. Where parol evidence is admissible to contradict or vary a written
instrument if there be but the unsupported oath of one of the parties to
the instrument on the one side and the opposing and contradictory oath
of the other party, together with the words of the instrument on the
other side, such unsupported oath, whatever the form of procedure, is
not sufficient to justify the reformation of the instrument, and in such
case the evidence should not be submitted to the jury.

3. Where a party to a transaction is dead and his interest has de-
volved upon another, the surviving party to the transaction is not a
competent witness as to the acts and conversations of the deceased in
relation to the transaction; but he is a competent witness as to the acts
and conversations which took place in the presence of the deceased be-
tween the surviving party and the one upon whom the interest of the
deceased has devolved.

April 19th, 1886.  Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, GREEN and CLARK, JJ.  STERRETT, J., ab-
sent.

ERROR to the Court of Common Pleas of *Schuylkill county :*
Of January Term 1885, No. 437.

This was a *scire facias* on a mortgage dated June 1st,
1872 for $9,000 on a farm in Schuylkill county given by Jo-
seph M. Payne, who was the defendant, to Samuel R. Jackson,
who was the plaintiff.

Pleas—payment with leave.

The plaintiff offered in evidence the said mortgage and
rested.

The defendant denied that he was indebted to the plaintiff
on the mortgage in any sum whatever.  The following are
the facts as they appeared on the trial before BECHTEL, J.:

On the 27th day of February, 1849, George Payne, the
father of Joseph M. Payne, the defendant, was the owner of the
farm mortgaged as aforesaid, and on that day executed a

mortgage upon the same to Samuel R. Jackson, the plaintiff, in the sum of $5,000. On the 30th day of July, 1855, George Payne conveyed in fee simple by two deeds of conveyance certain interests in three several tracts of land situate in Clinton county, Pennsylvania. A judgment was obtained in the Court of Common Pleas of Schuylkill county against the said George Payne for the sum of $633.80; execution was issued upon said judgment, the land embraced in said mortgage was levied upon and advertised to be sold on the 23d day of May, 1857.

On that day the said mortgaged premises were sold and bought by Francis W. Hughes, Esq., the attorney of George Payne and also of Jackson, for $2,200.

In 1860, Hughes conveyed the same to the plaintiff who leased it to George Payne.

The following correspondence *inter alia*, passed between the parties in relation to a settlement between them:

BRUNSWICK, *March* 2d, 1871.

GEORGE PAYNE, ESQ., Dear sir : I received yours 18th February. How do you propose to settle our affairs. I cannot see any benefit in my going to your place, unless you are prepared to arrange the business. All I want, as I told you, is the amount I have paid and interest, and I will re-deed you all, (farm and land). The amount is something over $8,000. Let me know how you propose to arrange it. I saw Mr. Yates not long since. He is unwilling to have any one cut the timber from those lands, but will sell. Your son Robert cut a large lot of timber and we got nothing from it. You cannot be more anxious to settle it than I am.

Yours, truly,

S. R. JACKSON.

BRUNSWICK, *March* 17th, 1871.

GEO. PAYNE, ESQ., Dear Sir : I received yours of 13th inst. and am at a loss to know what you mean by saying if I had done as I agreed I should have my pay before now. I am ready now, and always have been, to take my money and interest and deed you or any one you wish, all you deeded to me, farm and all, and now will make you this offer : If your son will pay me $1000 cash, and give me his note for the balance that I have actually paid, and interest from the time I paid it, payable ⅕ annually, and interest payable semi-annually, and a bond and mortgage to secure said note on the farm, I will deed him the farm and all lands you deeded to me.

Respectfully, yours,        S. R. JACKSON.

You say deed the farm to your son Jos., take a mortgage,

[Jackson v. Payne.]

and he will pay the int. regular and principal as it becomes due. You do not say any time. I have put it 5 years.

BRUNSWICK, *December* 8th, 1871.

J. M. PAYNE, ESQ., Dear sir: Yours of 2d inst. I have just received with blanks for deeds. I do not like to make the deeds until the land is redeemed, and will wait until you redeem them before making the deeds. Also, I must have a copy of Mr. Hughes and wife deed of farm to me (I cannot find it and think I never had it from record office,) to make a deed from, so I cannot make a description. When you redeem the land redeem all that stands in my name, and redeem it in my name and send me the Treasurer's certificate. I then can deed you your interest as we agreed, and will pay you the taxes on my interest. As soon as you send me a description of the farm and Treasurer's certificate for the redemption, I will make the deeds and send them to be exchanged for the note, bond and mortgage. You will also send me a map of the Sinnemahoning lands, so I can make a description of them in the deeds. I think you must have one. If you have not, you can get one of Mr. Taylor.

Yours truly,

S. R. JACKSON.

P. S.—Shall I make all the deeds to you.

On or about the first day of June, 1872, Jackson came to Schuylkill county with a deed already executed by himself and wife for the farm to Joseph M. Payne, and Joseph M. Payne upon the delivery of said deed paid one thousand dollars in cash and executed and delivered to said Jackson the mortgage in suit.

Joseph M. Payne testified that at the time of the execution of the mortgage in suit, Samuel R. Jackson, the plaintiff, demanded a bonus of two thousand dollars, and that although the debt in fact was only eight thousand dollars, said Jackson required from the defendant one thousand dollars in cash and the mortgage in suit for nine thousand dollars, or otherwise he would not convey the said farm or the Clinton county lands to the said Joseph M. Payne, and that in order to get the title to said properties, defendant paid the one thousand dollars and executed the mortgage in suit.

On cross examination, however, he said that nothing was said about a "bonus;" that he asked Jackson to carry out that transaction as it was originally understood and agreed, but that Jackson asked $10,000, to which he agreed, because he could do no better. Jackson testified, Joseph M. Payne made

[Jackson *v.* Payne.]

no objection to the amount stated in mortgage, and that there was no bonus charged, the sum of $10,000 being due him.

.Pursuant to the settlement made with J. M. Payne, a deed was executed by S. R. Jackson and wife to J. M. Payne, dated 15th July, 1872, conveying part of the land in Clinton county.

Under the foregoing testimony it was claimed by the defendant below:

1.—That the conveyance to Samuel R. Jackson, the plaintiff, by George Payne, of the Clinton county lands in 1855, and of the Schuylkill county farm by Francis W. Hughes in 1860, constituted but a mortgage to secure the indebtedness of George Payne to said Samuel R. Jackson, and that said Jackson was bound to reconvey said premises to the said George Payne, or to whomever he should designate upon the payment of such indebtedness, and that if the amount of cash paid, to wit: the sum of one thousand dollars and the mortgage of nine thousand dollars, exceeded such indebtedness, then the said Joseph M. Payne was entitled in this suit to a credit of such excess.

The defendant also claimed credit for timber cut on the Clinton county lands by one Freck, under a contract with B. T. Taylor, agent of the land owners.

When the deed for the Clinton county interest was delivered July 15th, 1872, to Joseph M. Payne, upon release to Jackson, the timber on the land embraced in the Freck contract, Mr. Payne gave him an order on B. T. Taylor for any amount that might be coming to him from such timber contract, Jackson at the same time agreeing to credit the amount received on the mortgage. Certain moneys from this source were received and credited. Freck did not comply with his contract, which expired in the fall of 1874, and the owners of the land contemplated the bringing of a suit at law against him. Joseph M. Payne had not complied with the terms of his mortgage as to making the payments as they became due, and had in the meantime conveyed all his interest in said Clinton county lands to his mother, Jane Payne.

On the 3d of November, 1874, a mortgage by George Payne and wife was given on these Clinton county lands to secure George Payne's bond to Jackson for $5,000 as collateral security for the payment of the mortgage in suit. Contemporaneously with the mortgage of George Payne and wife, an agreement tripartite was entered into between Jackson, George and J. M. Payne. The violation of the Freck contract was recited in this agreement; the proposed suit for damages, and also the mortgage above referred to. It was agreed, *inter alia*, that Jackson should in the suit take charge of the Payne interest.

The claim for damages against Freck was put in the hands of F. W. Hughes, Esq., as attorney for the owners. Suit was brought in August, 1875, and judgment obtained by verdict of a jury in March, 1880, for something over $11,000. Mr. Taylor testifies to his belief that if the suit had been pushed by Mr. Hughes and a judgment obtained, the amount of the judgment could have been obtained by or through an execution. When the judgment was obtained Freck was insolvent.

The plaintiff testified that the delay was due to the time of the court being taken in the Mollie Maguire trials.

Defendant's counsel offers in evidence deed dated 30th July, 1855, between George Payne of North Manheim township, Schuylkill county, Pennsylvania, and Jane, his wife, of the one part, and Samuel R. Jackson, of the town of Brunswick, county Cumberland, state of Maine, of the other part, consideration $819, for an undivided interest in several tracts of land in the county of Clinton.

Plaintiff's counsel objects, that the testimony is immaterial and irrelevant.

Defendant's counsel:—This is to be followed by evidence that this conveyance to Jackson was made to secure a debt of about $4000 which Payne at that time owed to Jackson; that subsequently some years afterwards, to-wit, 1872, Payne and Jackson wanted to arrange their affairs, Payne wanted his land and Jackson wanted security for his debt. They entered into negotiations by which it was arranged that Jackson should reconvey to Joseph M. Payne, a son of George Payne, Payne to hold his title in trust merely for the use, with that view to convey the same to his mother, the wife of George Payne, and that Jackson conveyed this body of lands in Clinton county to Joseph Payne in trust as aforesaid, and Joseph Payne in order to secure the debt which his father owed to Jackson, gave the mortgage in suit upon his individual property in Cressona; that at the time the conveyance was made, agreements were entered into by which Jackson was to have the benefit of contracts for the sale of timber upon these Clinton county lands, the proceeds of which were to be applied to the payment of this mortgage, and that Jackson had the benefit of such timber contracts, and received out of the timber the proceeds of the timber from these lands more than enough to pay off this mortgage. Admitted. (First assignment of error.)

Plaintiff in rebuttal offered to show by conversations with George Payne and with Joseph Payne in George Payne's presence, that it was admitted by them that the amount due him by George Payne for which he took the mortgage in suit exceeded the sum of $10,000.

Admitted in so far as Jackson had transactions with Joseph Payne not in the presence of George Payne. (Second, third and fourth assignments of error.)

The defendant requested the court to charge the jury, *inter alia*, as follows:

1. The presumption of law is that the mortgage dated 27th day of February, 1849, given in evidence by the plaintiff, was paid, and it is not evidence of a debt due from George Payne to S. R. Jackson, on the 15th day of June, 1872, when Joseph M. Payne gave the mortgage in suit to the plaintiff.

Answer.—The presumption of law is that the mortgage referred to in this point at the time herein mentioned was paid, and we affirm this point, unless you find that presumption is rebutted by the testimony before you. (Fifth assignment of error.)

1½. If the jury find, under the evidence, that Jackson held the Sinnemahoning (Clinton County) lands and the farm as a security for money loaned George Payne, he would not have a right in re-conveying to J. M. Payne and taking a mortgage for the debt due him to include more than the debt due him, and if he did, the excess over and above the debt would be illegal, and cannot be recovered in this suit.

Answer.—The deeds in evidence before you from George Payne to Samuel R. Jackson, and from Mr. Hughes to Mr. Jackson are absolute upon their faces, and purport to be conveyances of the property therein mentioned. A grantor may, however, show by parol testimony that a deed which purports to be a conveyance is in reality but a security for a debt or liability. The presumption is that the deeds are what they purport to be, and that the parties express by them their entire intentions, and the burden of proving the contrary in this case is upon the defendant who alleges it.

It is also well settled that when parol proof is relied upon to show that a deed absolute in form was intended as a mortgage, it must be clear and convincing; it must be established by proof of facts and circumstances outside of the deed, inconsistent with the idea of an absolute purchase. Now, keeping this in view, if under all the testimony, written and parol, you find the facts to be as they are stated and claimed to be in this point, then we affirm it. (Sixth assignment of error.)

2. The defendant, by agreement with the plaintiff, bearing date July 15th, 1872, released to the plaintiff his right to the timber in the tracts embraced in the Freck contract with an agreement that the proceeds of such timber should be applied to the payment of the mortgage in suit. If the jury find that the plaintiff prohibited Freck from cutting the timber on said lands and afterwards, under a claim to hold the timber under

[Jackson v. Payne.]

the aforesaid transfer, negligently or fraudulently sold said timber for much less than its value, the defendant has a right to apply the value of said timber to the discharge and payment of the mortgage in this suit.

Answer.—If you find the facts to be as they are herein stated from the testimony before you, we affirm this. (Seventh assignment of error.)

3. That the plaintiff having agreed by the contract of the 3d of November, 1874, to bring suit against Freck and prosecute the same to recover for the timber cut and not paid for, as well as for damages claimed, the plaintiff was bound to proceed with the same with due and proper diligence. If the jury find that the bringing of said suit, and the trial of the same was unnecessarily delayed, and that the plaintiff neglected or refused to have the suit prosecuted by other counsel when applied to, and that by reason of such delay the claim against Freck was lost, the defendant has a right to apply to the payment of the mortgage in suit so much of the Freck claim as equals his interest in said claim, as ascertained by the judgment in that suit.

Answer.—Keeping in view what we have heretofore said to you on this we say, if you find the facts relating to this matter to be as they are here stated, we affirm this. (Eighth assignment of error.)

4. Under the agreement in evidence of the 3d of November, 1874, the plaintiff agreed to apply as a credit upon the mortgage in suit any and all moneys received, or which he might realize by proper care and diligence, from securities and rights placed under the control of said plaintiff by said defendant, and the plaintiff having sold the timber upon the tract of land in Clinton county, Pennsylvania, warrant 3739, covered by the collateral mortgage dated the 3d of November, 1874, he is bound to account under the pleadings in this case for the value of the timber then standing upon said lands, and the jury may find the value of said timber from all the evidence in the case, and are not bound by the amount which the plaintiff sold the same for to Johnson and others, if they believe the amount paid by Johnson was less than the real value of said timber at the time of the sale.

Answer.—We have in substance already so instructed you, and will now say, if you find the facts to be as herein stated we affirm this point. (Ninth assignment of error.)

5. That as the plaintiff has persistently neglected to account to the defendant for the timber sold upon the Clinton county land, and timber cut under the Freck agreement, he, the said plaintiff, is bound to account to the defendant for the market value of the timber standing upon the land and sold

by plaintiff, and also the amount due for timber cut under the Freck agreement.

Answer.—We do not say to you whether or not the plaintiff has persistently neglected to account to the defendant for the timber herein mentioned; we have heretofore instructed you as to his measure of liability concerning this timber, and we refer you to that which has already been said upon this subject as an answer to this point. (Tenth assignment of error.)

The court instructed the jury, *inter alia*, as follows:

Now this testimony has been discussed by counsel for a considerable length of time. Counsel on both sides passed over all the leading features of it, as they claim, and have presented to you that which they claim to be proven by the evidence before you. We therefore think it unnecessary to make any extended reference to this evidence. (Eleventh assignment of error.)

As to the timber left after Freck ceased cutting, we say to you that if you find that a certain amount of timber was left on the Sinnemahoning (Clinton county) lands which was within Freck's contract, and which Freck should have removed and paid for, and that Jackson sold this timber to other parties, then he. Jackson, must account for the value of such timber, and you should credit the value thereof upon the plaintiff's claim. If you find the price at which Jackson sold this timber was really its value, then you should credit it at the price at which he sold it. If, however, he sold it for less than its actual value, then he should be charged with its actual value. That is, he is bound to allow a credit for the actual value of the timber, although he may have sold it for less than its value, for if he sold it all, the defendant had a right to have its value applied to the demand of the mortgage. (Twelfth assignment of error.)

If you find that Freck was solvent after November 3d, 1874, and continued solvent a continued length of time thereafter to enable Jackson by the use of diligence to collect the claim referred to in this agreement, but that Jackson failed to properly prosecute the same, and through his negligence the matter was delayed until Freck became insolvent, and the claim was no longer collectible, then we think the defendant, Payne, should be allowed a credit as against the plaintiff's claim, for such amount as the Payne interest in the Sinnemahoning lands would have been entitled to receive had the claim been collected, and so we instruct you. (Thirteenth assignment of error.)

What then is the real claim or amount of the claim of the plaintiff. Did the plaintiff agree and contract to convey the

[Jackson v. Payne.]

farm and Sinnemahoning lands for such amount as George Payne owed him? If so, then what was that amount? Was it beyond $10,000, as testified to by the plaintiff, Jackson, and did the defendant pay $1,000 cash and execute the mortgage in suit for the balance, namely, $9,000? If that is the truth of the transaction, then the $1,000 thus paid by the defendant would not now be a credit against the plaintiff's claim, and the $9,000 with interest thereon under the terms of the mortgage would be the basis of your calculation in ascertaining the plaintiff's claim at this time, and from this such credits of the defendant as you may find him to be entitled to, would have to be deducted. If you find that $2,000 of a bonus was added to the plaintiff's claim, and that the defendant was compelled to assent to this to obtain the conveyance of the title to the lands, and did not make a new or other contract with Jackson, then you just ascertain what was the true amount due the plaintiff by George Payne, and allow Joseph M. Payne credit as against such true amount, for such payment and credits as you may find him from all the evidence before you, and under our instructions as to the law, to be entitled to. (Fourteenth assignment of error.)

Take then all the evidence before you, and, keeping in view our instructions as to the law, ascertain what is the plaintiff's claim, what are the defendant's credits. Does the plaintiff's claim exceed the defendant's credit? If so, then fix the exact amount of difference, and render a verdict in favor of the plaintiff for such balance as you may find him to be entitled to.

If the defendant's credits equal or exceed the plaintiff's claim, then you should find in favor of the defendant generally. You cannot find any amount for which he could have judgment. (Fifteenth assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ filing the above assignments of error. .

*Guy E. Farquhar* and *F. P. Dewees*, for plaintiff in error.—
To set aside a solemn agreement between parties, and convert it into an obligation of a different import, the evidence of fraud or mistake ought to be of *what occurred at the execution* and should be clear, precise, and indubitable: Irvin *v.* Shoemaker, 8 W. & S. 70. It would be error to submit a question of fraud or mistake to the jury upon slight, trivial, or parol evidence: Stine *v.* Sherk, 1 W. & S. 95. It is not enough that there are parol stipulations contradictory of a written agreement in order to change its legal effect. There must be fraud, accident, or mistake, and the evidence of either must be

[Jackson v. Payne.]

clear, precise, and indubitable. We have gone very far in permitting parol contemporaneous evidence to defeat written instruments. To go farther would be to practically abrogate the rule: Thorne *et al. v.* Warfflein, 4 Out., 56. To materially vary or contradict a written contract by evidence of a contemporaneous parol agreement, it must be alleged that the contract was executed on the faith of the parol agreement: Calla *v.* Lukens, 8 Norris, 134; Merkel's Appeal, Id., 340; Rowland *v.* Fanney, 15 Norris, 196; Burger *v.* Dunkle, 4 Out., 118.

The question as to whether the terms of the mortgage should be varied was raised by the Court in presenting it in the general charge as a matter of fact to be ascertained by the jury. It has been often ruled to be error to submit a question of fact to the jury of which there is no evidence: Startwell *v.* Wilcox, 8 Harris, 123. Where a case is submitted to a jury upon clearly insufficient evidence, such as no court ought to sustain a verdict upon, it is its duty to reverse: Cauffman *v.* Long, 1 Norris, 80; Startwell *v.* Wilcox, 8 Harris, 117; Lower *v.* Clement, 1 Casey, 63. It is not too much to insist that there shall be evidence of circumstances from which the conclusion asked for may be reasonably predicated: Silveus' Ex'rs *v.* Porter, 24 P. F. S., 448; Kelley *v.* Thompson, 7 Watts, 401; Brawdy *v.* Brawdy, 7 Barr, 158; Cumming *v.* Hurlbutt, 11 Norris, 168; Nichols *v.* McDonald, 5 Out., 519; North West Branch R. R. Co. *v.* Swank, 14 W. N. C. Jackson was a competent witness under the Act of 1869: Karns & Tanner, 16 P. F. S., 297; Hostetter *v.* Schalk, 4 Norris, 222; Ashe *v.* Guire, 1 Out., 493.

Upon the question of negligence. The diligence required of the trustee, in the management of a trust estate, is precisely that which a man of ordinary ability would practice in the care of his own property: Jones' Appeal, 8 W. & S., 143.

A trustee who has acted in good faith and ordinary ability, will not be surcharged with more than he has actually received: Fox *v.* Weckerly, 1 Phila., 320; Scott's Estate, 22 Pitts., L. J.; Springer's Appeal, 4 W. N. C., 23; Conyngham's Estate, 25 Pitts. L. J., 23; s. c. 9 L. Barr, 57; Beck's Estate, 5 W. N. C., 274; Blecher's Estate, 10 L. Barr, 154; Witmer's Appeal, 87 Pa. St., 120.

A judge must view and weigh the facts and see if they are sufficient to submit to a jury. He must not cast the whole burden on the jury: Dean *v.* Warnock, 2 Out., 568, and cases therein cited; Brawdy *v.* Brawdy, 7 Barr, 156; Cumming *v.* Hurlbutt, 11 Norris, 168; Nicholls *v.* McDonald, 5 Out., 579; Lower *v.* Clement, 1 Casey, 61; Startwell *v.* Wilcox, 8 Harris, 123; Silveus' Ex'rs *v.* Porter, 24 P. F. S., 451; Cauffman *v.*

[Jackson v. Payne.]

Jones, 1 Norris, 80; Raby v. Cell, *supra;* Hyatt v. Johnson, 10 Norris, 200; Rowand v. Finney, 15 Norris, 196; Murray v. R. R. Co., 13 W. N. C., 217.

*William F. Shepherd* and *James Ryon* (*John Ryon* with them), for defendant in error.—A deed absolute on its face may be shown by parol evidence to have been intended as a security for the payment of money: Logue's Appeal, 8 Out., 136; Rhines v. Band, 5 Wr., 256; Reitenbaugh v. Ludwick, 7 Casey, 131.

A mortgage given to secure a joint debt is only good for the amount of the debt, and all above that is without consideration and usurious: Heath v. Page, 12 Wright, 130, 142.

It seems to us that the case comes precisely within the ruling in Karns v. Tanner, 6 Smith, 297, where it is said: " When one of two parties to a transaction is dead, the survivor and the party representing the deceased party stand on an unequal footing, as to knowledge of the transaction occurring in the lifetime of the deceased. The enacting clause, (Act of 1869), had opened the lips of all parties, but when death came in, it closed the lips of one and even-handed justice required the mouths of both to be sealed:" Murray v. New York & C. R. R. Co., 7 Out., 37; Arthur v. King, 3 Norris, 530; Kries Ex'rs v. Whitney, 32 P. F. S., 333: Gardner and Wife v. McLennan, 29 Id., 398.

A mortgagee in possession is bound to account for the rents and profits, and on proof of his refusal to account a jury should make every presumption against him that the evidence will warrant: Reitenbaugh v. Ludwick, 7 Casey, 131; Guthrie v. Kahle, 10 Wr., 831.

If a claim be transferred to a creditor as collateral security for the payment of a debt, it is incumbent on such creditor to use ordinary diligence to realize the claim, and he would be responsible for loss occasioned by an omission to do so: Miller v. Gettysburg Bank, 8 Watts, 192; Holt v. Body, 6 Harris, 207; Sellers v. Jones, 10 Id., 423.

When collaterals are placed in the hands of a creditor and they are lost by his negligence the debt is extinguished: Bank U. S. v. Peabody, 8 Harris, 207; Collingwood v. Irons, 3 Watts, 306; Chambersburg Ins. Co. v. Smith, 1 Jones, 120.

Mr. Justice Green delivered the opinion of the Court, October 4th, 1886.

We think it can not be questioned that the deed from Jackson to Joseph M. Payne of June 1st, 1872, and the mortgage in suit from J. M. Payne to Jackson of same date, for securing the payment of $9,000, were intended by all the parties to

represent, and actually did represent, an arrangement for
securing to Jackson the payment of a debt due by George
Payne to him. The legal title to the premises was at that
time in Jackson. He was willing to convey the title to
George. Payne or to any one he might name, and take a mort-
gage from the grantee of the title to secure his debt. All of
this was testified to by Jos. M. Payne, was not contradicted by
Jackson, and is corroborated most strongly by Jackson's let-
ters of March 2d, and March 17th, 1871, to George Payne,
and December 8th, 1871, to Jos. M. Payne. There was no
proof of any independent transaction · between Jackson and J.
M. Payne and no proof of any indebtedness from J. M. Payne
to Jackson other than that derived from the mortgage in
question. The object of the arrangement manifestly was, the
vesting of the title in some one representing George Payne,
and at the same time securing to Jackson the payment of the
debt which George Payne owed him in as effective a man-
ner as was possible, by a mortgage on the premises described
in that instrument. This being the true situation of the par-
ties, it is clear that the matter embraced in the offer of testi-
mony covered by the first assignment of error was competent,
because it tended to disclose, in connection with the evidence
by which it was to be followed, the character of the original
transaction between Jackson and George Payne. We think
it also illustrates the correctness of the answer to the defen-
dant's $1\frac{1}{2}$ point covered by the sixth assignment. That is,
upon the theory that the mortgage in suit was given to secure
a debt of George Payne, it should not include more than was
legally due, and any excess over that amount could not be
recovered although the mortgage given by J. M. Payne was
the obligation of another person. It seems to us also that
there was sufficient evidence to show that the original con-
veyance by George Payne to Jackson was intended merely as
a security for a debt, and not as an absolute deed. It would
not be possible to understand the letters and above all the
ultimate transaction with Jos. M. Payne except upon that
theory.

But the court went further than this and referred to the
jury the question whether there was a bonus of $2,000 exacted
from J. M. Payne, and added to the amount of the real debt
making it $10,000 instead of $8,000. In support of this
allegation there was no testimony but the unsupported oath
of Joseph M. Payne the defendant. It was absolutely denied
by the oath of the plaintiff and the case stood on this subject
upon the oath of the plaintiff and the mortgage on one side,
and the unsupported oath of the defendant on the other.

The letter of the plaintiff of March 2d, 1871, written more

than a year before and in which the plaintiff said "the amount is something over $8,000" contained a mere casual and indefinite statement, not purporting to be precise, and is of no weight whatever when contrasted with the solemn and deliberate act of giving a mortgage for a different amount fifteen months later. There was neither allegation nor proof of any fraud, accident or mistake, in the execution of the mortgage, nor of any promise then made as to its use which was subsequently violated. We have several times held, that in these circumstances parol evidence is not admissible to contradict or vary written instruments. We have also held that in any case where such evidence is admissible, if there is but the unsupported oath of one of the parties to the instrument on the one side, and the opposing and contradictory oath of the other party, together with the words of the instrument, on the other side, such unsupported oath is not sufficient to justify the reformation of the instrument, and in such case the evidence should not be submitted to the jury. In Phillips v. Meily, 10 Out., 536, both these phases of the general subject were carefully considered and authoritatively ruled, and in our subsequent reflection and experience have confirmed us in the views there expressed. Authorities to the same effect are Thorne v. Warfflein, 4 Out., 456, 519; Nicolls v. McDonald, 5 Id., 514; Smith v. Nat. Life Ins. Co., 7 Id. on p. 184; North and West Branch Railway Co. v. Swank, 9 Id., 555. In the case of Juniata Building Association v. Hetzel, 7 Out., 507 our brother TRUNKEY expresses our convictions fully in the following language: "The defendant seeks to escape liability on the ground of a verbal agreement that induced him to sign the bond, because it shifted his position, as it appears on the face of the bond, to a secondary one which cannot be reached until after exhaustion of another security. He sets up an equitable defence and contends that if the testimony of himself stands alone, and is contradicted by a dozen witnesses it remains for the jury to determine the facts involved. This is true as respects every question of fact in any claim at law, but every right founded upon a claim which is strictly equitable whatever the form of procedure, should be supported by evidence that would satisfy a chancellor. If a fact be averred in the bill and denied in the answer it cannot be pretended that the uncorroborated testimony of the plaintiff would be sufficient to establish such fact in a court of equity." As the attempt in the present case is to reform a mortgage by showing that it was given for an amount different from that which is expressed on its face, the contention comes clearly within the purview of the foregoing observations which are repeated in 9 Out. on p. 501–2. In the portion of the

[Jackson *v.* Payne.]

charge covered by the fourteenth assignment the learned court below submitted to the jury the determination of the question as to the amount due upon the mortgage as originally given, when in our opinion they should have given a binding instruction that it must be taken as $9,000, the amount stated in the instrument. In this we think there was error, and we therefore sustain the fourteenth assignment. The argument that the mortgage was obtained by duress we regard as without merit in any point of view. The first and sixth assignments are not sustained.

As to the second, third and fourth assignments we can not understand why declarations or acts which transpired between the plaintiff and the defendant in the present action, are not admissible, even though they occurred in the presence of George Payne. They are admissible because they are the acts and declaration of these parties, and they are no less the acts and declarations of these parties in every sense in which the law can regard them, whether *any* other person was present or not. We think that conversation with George Payne in his life time, or acts then done with him, can not be proved by Jackson in this case because it was George Payne's debt for which the mortgage in suit was given, and the plaintiff is the survivor of the transaction between him and George Payne, whose rights in this respect have devolved upon the defendant. But that circumstance can not defeat the right of the plaintiff to testify as to what took place between himself and the defendant, whether George Payne was then present or not. The defendant is alive, is a competent witness, and can testify fully in relation to the same matters. Between them there is no inequality if both may testify to the same matters occurring when both were together, but there would be very serious inequality if the defendant may, and the plaintiff may not, testify as to such matters. We sustain these three assignments in so far as they cover the exclusion of evidence by the plaintiff as to acts and declarations occurring between the plaintiff and defendant in the presence of George Payne. In other respects they are not sustained.

The fifth assignment is unimportant while, if the case stood only upon the mortgage of 27th February, 1849, a presumption of payment would arise in 1872, yet if the mortgage of 1872 were given in whole or in part for the same debt, that presumption would necessarily be thereby rebutted. The assignment is not sustained.

As to the seventh, ninth, tenth and twelfth assignments we do not feel that we can say there was no evidence, or not more than a scintilla, tending to prove at least negligence on the part of the plaintiff in the matters referred to, and hence we

can not sustain them. We do think, however, it would have been proper for the court to define with more accuracy the duty of the plaintiff in the premises, and to explain what acts or omissions would constitute negligence, and even to refer to some extent to the testimony on both sides on these subjects. Merely naming the witnesses on each side, or some of them, and telling the jury that counsel have discussed it and that they must find a fair and impartial verdict, is not an adequate mode of presenting such matters to a jury. It does not enlighten them as to what their duties are, nor does it furnish them with any sufficient guide for their action in considering and passing upon a mass of testimony the meaning and effect of which may not be very intelligible to the ordinary mind without explanatory comments by the court. As the case must be tried again, we do not desire to discuss the testimony, nor do we feel called upon to reverse upon any of the assignments we are now considering, trusting that what we have said in a cautionary way may receive the consideration of the court on another trial. These assignments are not sustained.

As to the eighth and thirteenth assignments we have serious question whether there was even a scintilla of evidence upon which the plaintiff can be properly charged with culpable negligence for not prosecuting the suit against Freck with due diligence, and thus becoming chargeable with the consequences of an actual recovery and collection of the claim against him. Very able and experienced counsel were employed to commence and prosecute the claim. An action was brought in due season. There was delay in getting it tried, but it is not easy to see how the plaintiff is responsible for that kind of delay. The cause was repeatedly on the trial list but not reached. The time of the court was occupied in an extraordinary degree by the trial of very exciting and important criminal cases. It is a hard measure of liability for a private citizen to be held responsible for delay in collecting a claim, when the delay was not of his own production. A judgment was recovered but it was five years after suit brought, and in the mean time Freck, the defendant, became insolvent and the claim was not collected. We will not reverse on these assignments, because what was said by the court was hypothetical upon assumed facts which if true would justify the conclusions expressed. But we have much doubt whether all the actual facts in evidence were sufficient to justify a conclusion of liability for negligence. Upon another trial we think the circumstances which would constitute liability by reason of negligence should be defined with more precision in order that the jury may understand the duty to which the plaintiff was subject in this regard, and in

4 AMERMAN—6

what respects, if any, he disregarded it to the injury of the defendant. The case is not the same as if the plaintiff already held a judgment against Freck for the claim in question and failed to take proper measures for its collection. But it includes the necessity of first obtaining a judgment and for that, after a suit was brought, other persons, some of them officers of the law. whom the plaintiff could not control, are in part responsible, and the question is whether the delay was due entirely to the fault of the plaintiff, or whether by greater exertions, such as a person would use in prosecuting his own claims, a speedier judgment might have been obtained, and if so, whether it would have been in time to collect the claim.

We can not say there was error in the language covered by the fifteenth assignment. It is perhaps amenable to some of the foregoing criticism, but in itself it is not error.

Judgment reversed and new *venire* awarded.