# The Baltimore and Philadelphia Steamboat Company *versus* Brown.

1. A bill of lading is not such a complete contract as to exclude all testimony of what is not expressed necessary to a complete contract. On its face it is but a memorandum and not in form a contract *inter partes*.

2. What a bill of lading clearly expresses may not be contradicted by parol, except as to fraud or mistake, but testimony may be received to explain it, or show what the real contract of which it is the memorandum was.

3. Evidence is admissible to explain a contract where something is omitted and the like, so as to qualify the tribunal passing upon the writing to interpret it truly according to the intent of the parties.

4. A bill of lading which receipted for the full freight for carrying between two points is a contract to carry between those points : per THOMPSON, J.

5. The name of the agent of a transportation company was printed on its bills of lading : *Held*, that the agent could make a contract for carrying goods which any authority of the company could make.

6. A transportation company may make a contract for carrying beyond their line and is responsible for the carriage of goods contracted for.

January 11th 1867. Before WOODWARD, C. J., THOMPSON, READ and AGNEW, JJ. STRONG, J., at Nisi Prius.

[Baltimore and Philadelphia Steamboat Co. *v.* Brown.]

Error to the District Court of *Philadelphia*.

This was an action on the case to December Term, 1862, by William H. Brown, against The Baltimore and Philadelphia Steamboat Company, to recover the value of a barrel of whiskey, delivered to the defendants to be carried to Fortress Monroe.

The defendants were a transportation company between Philadelphia and Baltimore. The Baltimore Steam Packet Company was a similar company, between Baltimore and Fortress Monroe.

On the 2d of April, the defendants' agent received at their office in Philadelphia, from J. F. Tobias & Co., for the plaintiff, a barrel of whiskey, and afterwards on the same day sent to Tobias the following bill of lading :—

| MARKS AND NUMBERS. | PHILADELPHIA & BALTIMORE STEAMBOAT COMPANY. |
|---|---|
| | *Daily (except Sundays), via Chesapeake and Delaware Canal.* |
| **W. H. BROWN,** **FT. MONROE,** **VA.** | Office in PHILADELPHIA, No. 34 South Wharves,   :   A. GROVES, Jr.,  } Agts.  Office in BALTIMORE, No. 3 Light Street Wharf,   :   J. A. SHRIVER.  } |
| | *Philadelphia, April 2d 1862.* |
| | RECEIVED *from* |
| | J. F. TOBIAS & Co., |
| | *ONE BBL. LIQUOR,* |
| *PAID* | *marked and numbered as per margin (Contents unknown), which we promise to forward (dangers of the seas, fire, leakage, breakage, and other unavoidable casualties excepted), to* |
| Contents and Conditions of packages being unknown, no responsibility is assumed therefor, nor will any package be estimated to contain articles of more value than $200, unless specially certified to the contrary when shipped. | J. A. SHRIVER, *or Agent in BALTIMORE, upon presenting this Receipt at our Office, and paying freight and charges therefor. Insurance made if desired.* |
| | Freight, $1.25 cts. to F. M. |
| | Charges, |
| | For the Company,           SWIFT. |

The whiskey arrived at Baltimore and was delivered by the defendants on the 3d of April to the Baltimore Steam Packet Company, who gave the following receipt :—

" Baltimore, April 3d 1862.

" Received, under and subject to the special agreement hereinafter expressed, from Baltimore and Philadelphia Steamboat Company, one barrel liquor, to be forwarded to W. H. Brown, Fortress Monroe, loss or damage as hereinafter expressed excepted, he or they paying freight for the same.

M. N. FALLS, *Agent."*

The connection between the two companies was a business connection only. When the defendants delivered goods to the packet company for transportation to Fortress Monroe, they paid to the packet company their portion of the freight, no portion of it between Baltimore and Fortress Monroe going to the defendants.

[Baltimore and Philadelphia Steamboat Co. v. Brown.]

There was evidence that the whiskey was carried to Fortress Monroe, but it was never delivered to the plaintiff.

Under objection and exception, a witness of plaintiff testified on the trial that in a conversation with Groves, the defendants' agent in Philadelphia, "I said, I have a barrel of whiskey for Fortress Monroe, but I have been told to send it by Adams' Express. He observed, Why don't you send it by our line ? It won't go any quicker by Adams' Express, and it will be much cheaper. He said Adams' Express Company's freight goes on the same boat that ours does, and will get there at the same time. I said, under those circumstances, I'll send it by your line ; and I sent it that day. Their goods went on the same boat from Baltimore to Fortress Monroe as Adams' Express goods. That is what he said."

The defendants submitted the following points :—

1. That the defendants, under their contract, did not undertake to deliver the barrel at Fortress Monroe, but only at Baltimore, and from there to forward to Fortress Monroe ; and that if they delivered the barrel of liquor to the Baltimore Steam Packet Company, to be carried to Fortress Monroe, they are discharged from all liability to the plaintiff.

2. That if defendants received freight from the plaintiff for the whole carriage to Fortress Monroe, but accounted to the Baltimore Steam Packet Company for their portion of the freight from Baltimore to Fortress Monroe, their receipt of the whole freight did not make them responsible to deliver at Fortress Monroe.

3. That there is no evidence in this case on which the plaintiff can recover.

4. That there is no evidence to prove that Mr. Groves had any authority to agree to carry the barrel of liquor to Fortress Monroe.

5. That the jury are not to consider the parol evidence given by the plaintiff of conversation with Mr. Groves, inasmuch as the written contract of the bill of lading is the only evidence of the contract of the parties.

The court charged :—

" If you find from the evidence a special contract through a regularly accredited agent, to ship to Fortress Monroe ; that freight to that place was asked and paid, and you find the barrel never arrived at Fortress Monroe, or never was delivered to the plaintiff, that will justify you in finding a verdict for the plaintiff ; and the mere sending up of the bill of lading would not alter the aspect of the case. You must take the whole evidence together. I decline charging as I have been requested by the defendants' counsel to instruct you."

There was a verdict for the plaintiff for $134.85.

The defendants took a writ of error, and assigned for error the

[Baltimore and Philadelphia Steamboat Co. *v.* Brown.]

admission of the evidence objected to, the refusal of the court to affirm their points, and the charge of the court.

*P. McCall*, for plaintiffs in error.—The effect of the parol evidence was to alter and contradict a written contract. A bill of lading is partly a receipt and partly a contract; the receipt may be varied by parol, the contract cannot: 1 Greenl. Ev. § 305; Ellis *v.* Willard, 5 Seld. 529; Wolfe *v.* Myers, 3 Sandf. 7; Heebner *v.* Worrall, 2 Wright 376; Harbold *v.* Kuster, 8 Id. 392. Such evidence, when admissible, must be received with strict caution: Stine *v.* Sherk, 1 W. & S. 195; Farmers' Bank *v.* Fordyce, 1 Barr 457; Hain *v.* Kalbach, 14 S. & R. 159.

Groves was the agent of the Baltimore and Philadelphia Steamboat Company, the terminus of whose line was at Baltimore, and no authority in him to contract for carriage beyond Baltimore could be implied: Seiple *v.* Irwin, 6 Casey 513; Stevenson *v.* Hoy, 7 Wright 191.

Under the bill of lading alone, the steamboat company were *carriers* only to Baltimore, and *forwarders* from there: 2 Pars. on Cont., § 13; Nutting *v.* Conn. River Railroad, 1 Gray 505; Hood *v.* New York & New Haven Railroad, 22 Conn. 1; Vant Santford *v.* St. John, 6 Hill 157; F. & M. Bank *v.* Champlain, 18 Vt. 140; Jenneson *v.* Camden and Amboy Railroad Co., 4 Am. Law Reg. 234.

The prepayment of the whole freight makes no difference: Hood *v.* New York & New Haven Railroad, 22 Conn. 1; Hunt *v.* N. Y. & Erie Railroad, 1 Hill 231.

[During the argument, WOODWARD, C. J., referred to Peters *v.* Rylands, 8 Harris 497, and READ, J., to Penna. Railroad *v.* Schwarzenberger, 9 Wright 208, and Tanner *v.* Oil Creek Railroad, 3 P. F. Smith 411.]

*Diehl*, for defendant in error.—Brown had a right to show a contract differing from the bill of lading as to the destination of the goods; and no more was proposed: Warden *v.* Greer, 6 Watts 424; Chouteaux *v.* Leech, 6 Harris 232.

The steamboat company received the whole freight, which was an affirmance of the contract of their agent.

The opinion of the court was delivered, February 11th 1867, by THOMPSON, J.—It appears in the uncontradicted testimony of Mr. Falls, president of the Baltimore Steam Packet Company, that that company and the Baltimore and Philadelphia Steamboat Company had business connections during the month of April 1862, and that his company's line plied between Baltimore and Fortress Monroe and other points. Both were transportation companies, and of course common carriers. It appears by the

[Baltimore and Philadelphia Steamboat Co. *v.* Brown.]

bill of lading that the whiskey, for the loss of which this action was brought, was shipped by the defendants' line to Fortress Monroe, addressed " W. H. Brown," on the 2d April 1862. It never came to hand according to address, and was entirely lost to the plaintiff, but how or by what means does not appear. This, however, is not material, as there was no evidence or offer to prove that it was lost by any of the excepted perils mentioned in the bill of lading.

The clerk of the firm who shipped the whiskey and paid the freight, was called by the plaintiff and proved the undertaking of the defendants to carry the cask to its destination, and its shipment pursuant to the contract. It seems from his testimony that it had been the intention of the consignors to send it by Adams's Express, and that this determination was changed under the advice and contract of the defendants' agent to convey it by their line, he telling the witness that Adams's Express went by the same boat from Baltimore to Fortress Monroe, by which their freight would go, and would get there at the same time, and would be much less expensive. He shipped it by defendants' line, and prepaid the freight, under the agreement by the defendants' agent to carry it through.

The testimony disclosed very clearly an undertaking to transport the whiskey to Fortress Monroe on part of the defendants ; but they objected to the evidence, and claimed that the bill of lading was the contract between the parties, and being in writing, excluded all oral testimony of it.

We do not think the doctrine to the extent contended for can be maintained in regard to a bill of lading, and that it is such a complete contract as to exclude all testimony of what is not expressed and necessary to a complete contract. On its face it is but a memorandum, and not in form a contract *inter partes*. It is doubtless an instrument fitted for the occasions in which it is usually employed, and while what it clearly expresses may not be contradicted by oral testimony, unless under the qualification of fraud or mistake, yet there is no rule which excludes testimony to explain it, and to show what the real contract was, of which it is but a note or memorandum at best.

The general rule undoubtedly is, that parol evidence is not admissible to contradict, vary or alter a written instrument, because the writing is the most exact, as well as the most deliberate and solemn mode of evidencing a contract. Whenever, therefore, evidence is admissible for any such purpose, it must generally have a foundation in pre-existing evidence of fraud, accident or mistake. But not so where the evidence is not to contradict or vary, but to explain the contract, as when something is omitted, and the like, so as to qualify the tribunal passing upon the writing to interpret it truly according to the intent of the

4 P. F. Smith—6

parties. Our books are full of authorities to this effect, but only the following will be referred to at present: 8 Harris 464; 7 Casey 252–265; 11 Id. 212; 12 Wright 491; 10 Id. 420; 1 Greenl. Ev. 285, 288. The rule is well illustrated by the admission of parol evidence of a consideration not mentioned in a deed: 1 Penna. R. 486.

Nothing was contradicted by the oral evidence admitted here. But that without which the bill of lading was unintelligible was made perfectly clear, and an implication contrary to the fact was rebutted by it, which may be done (11 Casey 212), namely, that the reference to Fortress Monroe in the bill, purported that it was to be transhipped to that point by the defendants, but not conveyed or carried. The oral testimony showed a contract to carry or cause to be carried to that point, and any doubt upon the face of the bill and the receipt of fare through, as to what was intended by its terms was dispelled, while nothing therein was contradicted. I incline to think that the bill, with a receipt on it for the through fare, was sufficient evidence of a contract. If so, the evidence did no harm; if not, the testimony was admissible to explain what was intended. In either aspect there was no error in its admission. In 34 Ill. Rep. 389, Illinois Central Railroad *v.* Johnston, the implication from the receipt of fare of a contract to carry beyond the company's line is distinctly asserted. So also to the same effect is Illinois Central Railroad *v.* Copeland, 24 Ill. 338, and in the Railroad Co. *v.* Schwarzenberger, 9 Wright 208, it is said by this court that the receipt of fare from Philadelphia to Cincinnati, if there was nothing to restrict it, might raise a presumption of an agreement to carry over the route between the two cities. So that in fact the point seems against the defendants either by the bill aided or unaided by the oral testimony. In the very recent case of Malpas *v.* The London and South Western Railway Co., 35 Law Jour. 166, the admissibility of parol testimony in the case of a bill of lading is expressly decided in the affirmative in Common Bench. The plaintiff shipped cattle to be carried to King's Cross. The bill of lading was for carriage to Nine Elms, freight 14 shillings. But this was the fare to King's Cross, and eight shillings was the regular fare to Nine Elms. Oral testimony of the contract was admitted against a similar objection to that made here. In disposing of the question, it was not put upon the ground of mistake, but to show what the contract of shipment was. Erle, C. J., said "the oral evidence does not vary or contradict the written contract, but shows an additional contract to carry to King's Cross." The court held the evidence properly received. These views rule the main points against the plaintiff in error, and fully sustain the court below.

2. Some question was made on argument as to the authority

[Baltimore and Philadelphia Steamboat Co. *v.* Brown.]

of Groves, the agent of the defendant, to make such a contract as the plaintiff claims he did make. On the face of the printed bill of lading of the company he is held out as the general agent of the company; his business was to receive and receipt for goods and freight. It would be idle to deny his authority in the face of such evidence. If any authority in the company could make a contract to carry goods from Philadelphia to Fortress Monroe, we see not why the agent could not. It was a contract exactly within the scope of the company's business, and good if it could be made by any authority of the company.

But it is said the contract could not be made by the authority of the company, for it was *ultra* the defendants' line. We do not think this objection good, more especially when the contracting line is in business connection with a line doing business to the extent of the *transit* engaged, as was the case here. Between freighter and carrier such an objection cannot avail. We know of no positive law against it, and see no reason arising out of the ordinary powers of the company why it should not be so. Had there been any special clause in the charter, the question might have been different; but none such was alleged or shown. We certainly see no policy in the law that is violated by such contracts, but, on the contrary, great convenience by holding them valid. How the matter might be in a contest between a stockholder and the company, we are not prepared to say; but when the power is assumed and the company has undertaken to carry and been paid for it, we hold it bound and answerable for all injurious breaches of the contract between the points of *transit*. This has been often decided: 24 Ill. 338; 32 Id. 120; 34 Id. 389; 25 N. Y. 336; 4 Seld. 37; 5 Duer 55; 24 Barb. 382; 29 Id. 35. And in England, 8 Mees. & Wels. 421; 3 Eng. Law & Eq. 497; to which might be added many other English cases; and also by this court (Chouteaux *v.* Leech, 6 Harris 224), and assumed to be the law in Railroad Company *v.* Schwarzenberger, *supra*, without question.

As we see nothing on the record to correct, the judgment is affirmed.