# The Camden and Amboy Railroad Company *versus* Forsyth, Brothers & Co.

61 81
174 65
61 81
196 62
61 81
27 SC 349
61 81
33 SC 648

1. The Pennsylvania Railroad Company gave a receipt to Forsyth for oil to be delivered to " Leech at the company's freight station, Philadelphia;" appended to the receipt was, " Rate to Red Hook, 65 cents. * * This oil is carried only on open cars and entirely at the owner's risk from fire and leakage while in possession of the railroad company or carriers, while standing or in transit." The freight was to be paid at Red Hook. Mentioning Red Hook as the ultimate destination and payment of freight there, was at most no more than an engagement to forward to that place.

2. The limitations in the contract as to the liabilities of the Pennsylvania Railroad apply only to that portion of the route on which they act as carriers, not to that with reference to which they are forwarders.

3. The exemption from liability as to oil affected only the Pennsylvania Railroad.

4. The Camden and Amboy Railroad Company gave a receipt to " Leech, agent of Pennsylvania Railroad," for the oil to be transported to New York; the oil was destroyed by fire between Philadelphia and Red Hook. *Held,* that the Camden and Amboy Railroad were liable, there being no other contract with them than their receipt, which did not limit their common-law liability as carriers.

February 15th 1869. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Certificate from Nisi Prius: No. 320, to January Term 1865.

This was an amicable action in case, entered May 13th 1865, between Jacob Forsyth and others trading as Forsyth, Brothers & Co., plaintiffs, and The Camden and Amboy Railroad and Transportation Company. The declaration in several counts charged the defendants, as common carriers, with negligence in not transporting safely 113 barrels of refined petroleum from Philadelphia to Red Hook, an oil depot about thirty miles below the city of New York.

11 P. F. SMITH—6

[Camden and Amboy Railroad Co. *v.* Forsyth.]

On the trial before Thompson, C. J., the plaintiffs gave in evidence the following receipt:—

"Received, Philadelphia, November 9th 1863, of Leech & Co., agents of Pennsylvania Railroad Company, in apparent good order, to be transported to New York, the following articles, viz.," (enumerating them, and including the petroleum in controversy), signed "for C. & A. R. R. & T. Co.; JNO. L. APPLEY."

Also bill of lading as follows:—

"Pennsylvania Railroad Company.

"S. B. Kingston, Jr., freight agent, Philadelphia, Pa.      *      *

"Received, Pittsburg, October 30th 1863, of Forsyth, Brothers & Co., the following packages, in apparent good order, marked as per margin, which we promise to deliver in like order to Leech & Co., at the company's freight station at Philadelphia, upon the following conditions:—

"The owner or consignee to pay freight and charges as per specified rates, upon the goods as they arrive by car-loads.

"Freight carried by this company must be removed from the station at Philadelphia *during business hours* on the day of its arrival, or it will be stored at the owner's risk and expense, and in the event of its destruction or damage from any cause while in the depot of the company, it is agreed that said company shall not be liable to pay any damages therefor.

"It is agreed, and is part of the consideration of this contract, that the company will not be responsible for leakage of liquids, &c., * * * or loss or damage to goods occasioned by providential causes, or by *fire* from *any cause whatever*, while in transit or at stations, unless the additional charge of five cents per one hundred pounds be added to the following rates, in consideration of the company insuring the goods safe to Philadelphia or Baltimore against all hazard, by instructions of owners or shippers before shipping. * * *

"Freight to be paid upon the weight of the company's scale at Pittsburg.

"The company not responsible for accidents or delays from unavoidable causes. The responsibility of this company as a common carrier, under this bill of lading, to commence on the removal of the goods from the depot, Pittsburg, in the cars of the company, and to terminate when unloaded from the cars at Philadelphia or Baltimore.

"Special Rates. { Rate to Red Hook, 65 cents per 100. Single packages under 100 pounds.

| MARKS. | ARTICLES. |
|---|---|
| G. & P. 112. Nov. 2d. F. 56. for Brewer, Watson & Co., N. Y. | One hundred and twelve bbls. refined oil. Fifty-six bbls. refined oil. This oil is carried only on open cars and entirely at owners' risk from fire and leakage while in possession of railroad company or carriers, while standing or in transit. |

McCULLOUGH."

The plaintiffs then gave in evidence a copy of the manifest of barge "Young James," which showed 855 barrels altogether on barge, of which 240 were benzine, 195 were tar, 5 paraffine, and the remainder 415 refined oil.

S. B. Kingston, freight agent of the Pennsylvania Railroad Company, testified that the rate in the bill of lading applied to the whole route, was divided *pro ratâ* between that company and the defendants and paid at Red Hook. Leech & Co. were the transfer agents of the Pennsylvania Railroad Company; the oil was delivered by them at Washington street wharf, Philadelphia, and transported by boat through the Raritan canal. The clause "to be carried in open cars," was inserted solely for the Pennsylvania Railroad Company.

Walter Freeman, freight agent of the defendants, testified that barges had been established by them in 1862. Oil saturated the floors of the cars and the decks of the steamers and was prohibited being carried into the city of New York, it was therefore put into barges and run direct to Red Hook. In this case the reason why no bill of lading was issued by the defendants was because of the issue of a through bill by the Pennsylvania Railroad Company. Appley had authority to sign the receipt, but no authority to make a special contract such as a bill of lading.

J. J. Matthews, captain of the barge "Young James," testified that he put part of the 800 barrels of oil on deck and some in the hold; there were twelve barges besides his own in tow of the steamer Princeton, a large tug steamer of low pressure and high stacks and not known to emit sparks: there were two barges between the steamer and the "Young James." There was no light on the barge, except a lamp enclosed in three white and one green panes of glass, which was at the stern. About eight miles below New Brunswick in the Raritan river, witness was in the cabin and a light suddenly sprang up ahead of him; a barrel then exploded, the barge took fire, and he cut the boat loose from the tow. He testified that the barrels were not leaking; his was the only coal-oil boat in the tow. There was much evidence by the defendants of the inflammable and dangerous character of coal-oil.

[Camden and Amboy Railroad Co. *v.* Forsyth.]

The plaintiffs submitted the following points, amongst others:—

1. The liability of the defendants for the loss of goods, the subject of this suit, is to be ascertained from the written contract as contained in the receipt, given by them to Leech & Co., of November 9th 1863, and by the terms of the said contract their liability as common carriers extends to loss by fire, from whatever cause the same may have occurred.

2. The exemption of the liability of carriers from loss by fire to plaintiffs' oil, contained in the bill of lading of the Pennsylvania Railroad Company in evidence in this cause, extends only to the same while in charge of the said Pennsylvania Railroad Company and of the said Leech & Co., while in transit from Pittsburg to Philadelphia.

The court charged:—

"I confess to some change of opinion from my first impressions in regard to the principles of law to be laid down in this case. They are not without difficulty; but whatever views we take of the law, bind you.

"The 1st point of the plaintiffs I answer in the affirmative. I see no other contract with the defendants than the receipt of their shipping agent for the oil. That it was received on board the barge 'Young James' and destroyed by fire while in charge of the defendants is admitted. This receipt has no limitation of a common carrier's liability, and as the defendants were common carriers and insurers for the carriage of the property against everything but the act of God and the public enemies, they are liable to the plaintiffs for the oil shipped (with the exceptions named), as shown by the receipt, and the parol evidence in the case does not change or alter the liability of the defendants, for it does not seem to me to bring their case within the exceptions named.

"2. I affirm the plaintiffs' 2d point also. I regard the exception in the bill of lading issued by the Pennsylvania Railroad Company to the plaintiffs, as extending no further than the line of their road.

"These views render answers to the 3d, 4th and 5th points of the plaintiffs unnecessary, and leave to you, gentlemen of the jury, nothing but to find that the oil was delivered to the defendants to be carried; its loss, if other than by what is called the act of God or public enemies, and the amount which the plaintiffs are, under the evidence, entitled to recover, if the loss was by any other than the causes mentioned. That will be the value of the oil at the place of destination, less cost of transportation, to which you should add interest. The gross sum thus made up, will be what plaintiffs are entitled to recover, if your verdict is with them."

The jury found for the plaintiffs for $2804.98.

[Camden and Amboy Railroad Co. *v.* Forsyth.]

The defendants had the case certified to the court in banc, and in two specifications assigned the charge of the court for error.

*J. E. Gowen,* for plaintiffs in error.—Does the last limitation in the bill of lading of the Pennsylvania Railroad Company avail the defendants? The limitation would have availed the Pennsylvania Railroad Company: Farnham *v.* The Camden and Amboy Railroad, 5 P. F. Smith 53, and therefore should protect the carriers associated with that company. All parts of a contract and all its language must have validity: 1 Parsons on Cont. 17, 18; Hoffman *v.* Danner, 2 Harris 29; Rutherford's Inst., b. 2, ch. 7; Chitty on Cont. 70; Smith on Stat., § 527; Ward *v.* Whitney, 4 Seld. 446; Westcott *v.* Thompson, 4 Smith (N. Y.) 364. It is not to be presumed that the defendants would take the risk of so dangerous an article without other limitations than the common-law liability: Collins *v.* Bristol and Exeter Railway, 11 Exch. 789; s. c. 5 H. & N. 969; Muschamp *v.* Lancaster Railroad, 8 M. & W. 421; 2 Redfield on Railways 99; Id., § 12; 1 Parsons on Cont. 687, note K; Jennison *v.* C. and A. Railroad, 4 Am. Law Reg. 234.

*M. J. Mitcheson* and *M. P. Henry* (with whom was *J. H. Martin*), for defendants in error.—A limitation of the liability of common carriers will not be presumed. The defendants cannot take advantage of the limitation in the bill of lading of the Pennsylvania Railroad: Garnett *v.* Willian, 5 B. & Ald. 53; Sleat *v.* Flagg, Id. 342; Davis *v.* Garnett, 6 Bing. 716; Nutting *v.* Conn. Railroad Co., 1 Gray 502; Elmer *v.* Naugatuck Railroad Co., 23 Conn. 457; Railroad Co. *v.* Sullivan, 25 Georgia 228. A through rate in a bill of lading does not make the transporter a contractor over the whole line: McMillan *v.* Mich. S. and N. I. Railroad, 16 Michigan 79; Collins *v.* Bristol and Exeter Railway, *supra.*

The opinion of the court was delivered, February 25th 1869, by

SHARSWOOD, J.—The contract of the plaintiffs with the Pennsylvania Railroad Company, was to carry the barrels of oil received at Pittsburg to Philadelphia and there deliver them to Leech & Co., at the company's freight station. If there was any undertaking implied from the fact that the ultimate destination of the goods appeared on the bill of lading to be Red Hook, and the freight was to be there received for the carriage over the whole route, it would be only an engagement to forward to that place. This is now the received doctrine in the American courts, as is ably shown by Judge Stroud in Jennison *v.* The Camden and Amboy Railroad Co., 4 Am. Law Reg. 234, who cites and comments on all the leading authorities. The limitations and stipula-

tions contained in the contract in regard to the liabilities of the Pennsylvania Company as carriers, naturally apply only to that portion of the route in which they act as such, and not to the part in reference to which they are forwarders. ˙Not that they could. not as agents for the carriers, beyond the terminus of their own road, stipulate for a limitation also of their liability. The question is, have they done so in this instance? It is argued that whatever stipulations are contained in the bill of lading given for the goods when originally received, ought to be presumed to extend over the whole route. "The American cases upon the subject, with rare exceptions," says Judge Redfield, "recognise the right of a railway company to enter into special contracts to carry goods beyond the line of their own road. And when different roads are united in one continuous route, such an undertaking in regard to merchandise received and booked for any point upon the line of the connected companies is almost matter of course:" 2˙Redfield's Law of Railways 104. If this could be construed to have been a contract by the Pennsylvania Railroad Company to carry to Red Hook, then, indeed, it would be a natural and necessary presumption—that all its terms and limitations should apply to the ˙carriers over every part of the route. The counsel on both sides in this case have relied on The Bristol and Exeter Railway *v.* Collins, 7 House of Lords 197. The contract there by the company, who received the goods, was to carry to the point of ultimate destination on another road. This was the decision of the court of the last resort, and hence Lord Chancellor Chelmsford said: "I think, therefore, that the contract was entire, was for the whole journey from Bath to Torquay, and was made with the Great Western Railway Company alone; that the goods were carried over the defendants' railway under the contract, and that the defendants are consequently either not liable at all, as no agreement was entered into with them, or that if the contract in any way attaches to them, the exception as to loss by fire accompanies it and exonerates them from liability." In the Exchequer Chamber the receipt-note was considered as plainly showing that the contract of the Great Western Company was merely to carry to Bristol and to forward them by another carrier, and the exemption from liability provided for by the contract, was held to apply to the Great Western Company alone: 1 Hurlst. & N. 517. It is evident that the decision in the Exchequer Chamber is that which is applicable to this case if the Pennsylvania Railroad were carriers only to Philadelphia and forwarders beyond.

The part of the bill of lading relied on as containing a stipulation relieving the defendants from liability, is the written memorandum subscribed in these words: "This oil is carried only on open cars, and entirely at the owner's risk from fire and leakage,

[Camden and Amboy Railroad Co. v. Forsyth.]

while in possession of the railroad company or carriers while standing or in transit." The first part certainly only applies to transportation by rail. Now, beyond Philadelphia the transportation was by barges through the Delaware and Raritan Canal to Red Hook. If the memorandum looked beyond the terminus of the Pennsylvania Railroad Company, it would not have been stipulated that the oil should be carried only on open cars. "While in the possession of the railroad company" certainly means the Pennsylvania company, "or carriers while standing or in transit," naturally following in the same track, means just as certainly "their carriers, whether standing at stations or depots, or in cars while actually moving." It would be a violent construction to conjecture that subsequent carriers were those meant. Doubtless it would have been so expressed if it had been so intended. The court were perfectly right, therefore, in instructing the jury that there was no other contract with the defendants than the receipt of their shipping agent for the oil, which contained no limitation of a carrier's liability at common law.

Judgment affirmed.