# Hostetter & Company, Plffs. in Err., v. Baltimore & Ohio Railroad Company.

Where certain shippers of goods, in accordance with their usual custom, sent to the railroad company by which they made a particular shipment a "dray ticket," filled up by the shippers, to be signed as a receipt for the goods by the proper officer of the freight department of the railroad company, containing a description of the goods, together with the name of the consignee and destination of the goods, and providing that the goods should be forwarded "subject to conditions of company's regular bill of lading," and such bill of lading was in a form which gave the railroad company

Cited in Keller v. Baltimore & O. R. Co. 10 Pa. Super. Ct. 240, 249.

NOTE.—The principles here laid down as to the effect of the bill of lading as a contract, and the termination of liability by delivery to the connecting carrier, were reaffirmed in Keller v. Baltimore & O. R. Co. 10 Pa. Super. Ct. 240. Upon appeal to the supreme court, this decision was affirmed. Keller v. Baltimore & O. R. Co. 196 Pa. 57, 46 Atl. 261.

the option of forwarding goods by any route, from its terminus to the designated destination beyond its line, and the usual route between the terminus of the receiving railroad and the designated destination was by water, *held*, that the sending of such "dray ticket" constituted a contract between the shippers and the receiving railroad company for the transmission of the goods in the ordinary way, *i. e.*, by rail and water and not by all rail.

*Held further*, that the sending of such "dray ticket," which contained no designation of an all rail route, would be a revocation of a distinct agreement for an all rail route, claimed by the shippers to have been made by telephone, admitting such agreement to have been made, which was denied by the railroad company.

Hence, where goods marked to a consignee at a point beyond the terminus of the receiving railroad, the usual route to which point was by water from such terminus, were delivered by the shippers to the railroad company, accompanied by said "dray ticket" containing no designation of an all rail route, *held*, that if the railroad company delivered the goods, at its terminus, to a responsible carrier by steamer for the designated destination, in the way it was accustomed to ship goods, the railroad company's liability under its contract with the shippers was ended.

(Argued October 25, 1887.  Decided November 7, 1887.)

October Term, 1887, No. 32, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.  Error to the Common Pleas No. 2 of Allegheny County to review a judgment on a verdict for defendant in an action of case to recover the value of certain goods intrusted to the defendant railroad company for transportation, but never delivered to the consignee.  Affirmed.

The facts appear in the following charge of the court below, EWING, J.:

It seems that Hostetter & Smith, the plaintiffs, shipped by way of the Baltimore & Ohio Railroad to Charleston, South Carolina, on the 21st of January, 1885, 50 boxes of bitters worth $7.50 a box, and that they were never delivered to the consignees, Clatter & Brother.  The evidence on both sides shows that the plaintiffs are large and frequent shippers over the defendant's road.  They are shippers to such an extent that they keep blanks on hand of the bills of lading and of what they call "dray tickets," that they fill up and send to the freight office when they have a shipment to make over that road.  The plaintiffs knew that the road of the Baltimore & Ohio Railroad Company terminated at Baltimore, so far as its route to Charleston was con-

cerned, and that the goods had to be shipped from there by way of some other road or by vessel. There is no dispute that the contract was that if the Baltimore & Ohio Railroad Company should deliver the goods in good order at its terminus to the proper carrier for Charleston, then its liability ceased. If accident occurred to them from negligence of the shipper beyond Baltimore, the Baltimore & Ohio Railroad Company would not be responsible to the plaintiffs, but the water transportation company would. That is in the written contract, and there is no cavil in regard to that part of it.

Plaintiffs claim, however, that the defendant did not deliver to the right carrier at Baltimore for further shipment to Charleston, and they say that on the day of the shipment (perhaps the day before) they telephoned to the Baltimore & Ohio. Railroad Company's freight office to get an all rail rate to Charleston, and they got an answer of 90 cents. We admitted the testimony because we think that the business of communication by telephone is so well and plainly recognized among business men in this city and in the cities of the country generally that contracts made in that way must be recognized. We think also that if the plaintiffs communicated with the Baltimore & Ohio Railroad Company's freight office, asking a question and got an answer, the presumptions are it was given by some officer authorized to make it. Mr. Myers said that he had a conversation over the telephone with an officer of the defendant company in which an all rail rate was given. The officers of the Baltimore & Ohio Railroad Company deny that there was any such contract, and say they were simply asked for a rate. If it stood on that alone we would leave it to the jury to say whether or not such a contract was made, that the shipment was to be by all rail, but the testimony on both sides shows that the plaintiffs kept a blank of this kind of the defendant's (shows dray ticket in evidence), and when they came to ship the bitters they filled up two of these blanks which corresponded, one of them to be signed by the receiving officer at the freight depot and returned to plaintiffs, and the other to be kept by the railroad company. That blank was filled up in the office of Hostetter & Company, not by the railroad company, and it was a receipt for 50 boxes of bitters for Charleston, S. C., H. Clatter & Brother, with this provision: "It is agreed and it shall be transported only on the conditions named in the company's regular bill of lading."

The bill of lading was filled in by Hostetter & Company and sent there.

Now, under the course of business as testified to on both sides and not in dispute at all, this makes the contract between the parties. If it was to be an all rail route or to be something different from the ordinary bill of lading it should have been on the dray receipt plaintiffs sent up to the depot, and especially when the business that they claim was transacted was by telephone. Even if it had been understood distinctly that the freight was to go by an all rail route I take it that the sending of this ticket without any designation of that kind on it would be a revocation, and it was to go in the ordinary way. So I instruct you that under all the evidence there is not sufficient to make an agreement on the part of the railroad company that these bitters were to go by an all rail route. The action of the plaintiffs afterwards in sending the goods up with the bill of lading and the dray receipts made out to be shipped in the ordinary way is to be taken as the contract.

This bill of lading, as I understand it and as I instruct you, gives the defendant the option of shipping by any proper, reasonable route from its terminus to Charleston. Plaintiffs say, and defendant also, that the usual route has been to ship by water from Baltimore. Defendant says that the rate fixed was the rail and water rate, and not an all rail rate. I instruct you that if the defendant delivered at Baltimore the goods of the plaintiffs to a responsible carrier by steamer for Charleston, in the way it was accustomed to ship, that is the end of its liability under this contract. The testimony of the last witness who was called, who states he was the transfer shipping clerk at Baltimore, is that he attended to the shipping of these goods, and that they were shipped in good order a few days after the date of their receipt at Pittsburgh, on a certain steamer of the general line of transportation. If that was done that is the end of the defendant's liability. There is no evidence to contradict that testimony, and I do not see any reason why you should not believe it. If you do believe it, your verdict should be for the defendant. If the plaintiffs have a claim against anybody, it is against the steamboat company running between Baltimore and Charleston.

To which charge counsel for plaintiffs excepts and therefore bill sealed.

The "dray ticket" in question was as follows:

Baltimore & Ohio Railroad Company.

Pittsburgh, Pa., Jan. 21, 1885.

Shipped by Hostetter & Co., to be forwarded, as marked, the following enumerated property, subject to conditions of company's regular bill of lading:

| Marks—(consignee and destination) | Articles | Weight |
|---|---|---|
| K. Charleston, S. C. For H. Klatte & Bro. Charleston, S. C. | 50 Boxes Bitters | 2,200 |

The plaintiff submitted the following points:

1. That a bill of lading, on its face, is but a memorandum and not in form a contract *inter partes;* and oral testimony may be received to show the real contract. Baltimore & P. S. B. Co. v. Brown, 54 Pa. 77.

2. The fact that a railroad company gives a shipper a bill of lading when the goods are delivered does not preclude the shipper in an action against the railroad company as common carriers from showing, when such is the fact, that the bill of lading does not express the terms of the transportation contract. Mobile & M. R. Co. v. Jurey, 111 U. S. 584, 28 L. ed. 527, 4 Sup. Ct. Rep. 566.

3. If the jury believe from the testimony of Myers and Robb that a contract was made for the transportation of the goods from Pittsburgh to Charleston by railroad, or "all rail," and defendant company caused a transshipment from Locust point by a sea-going vessel, and the goods were lost, it is liable, such change of the route agreed upon being negligence on the part of the railroad company.

4. That the customs observed by defendant company are not binding upon plaintiffs, unless brought directly to their knowledge.

*Ans.* The view the court takes of the testimony as bearing on the claim of plaintiffs that there was a special contract that the goods should be sent by an all rail route, to wit, that it is insufficient to establish such contract, renders it unnecessary to an-

swer these points in detail.   They are refused, except as an-
swered in the general charge.

The defendant submitted, *inter alia,* the following points:

1. That in this case the agreement expressed in the bill of
lading, upon which the goods in question were shipped, is the
sole evidence of the contract between the plaintiff and defendant
as to the transportation of said goods, and by the said contract
the defendant had the right, upon the arrival of the goods at
the terminus of its line, to deliver them for transportation to
their destination to any customary, usual, and responsible car-
rier, either by rail or water, carrying between the terminus of
defendant's road and the point of destination of said goods, and
after such delivery to such connecting carrier, under said con-
tract, the defendant is not liable for loss or damage occurring
after on the line of said connecting carrier.   Affirmed.

3. That the testimony of the plaintiff, in reference to the con-
versation with the freight office of the defendant by the tele-
phone, is insufficient to establish a contract between plaintiff and
defendant to ship the said goods exclusively by rail to point of
destination, the plaintiff having shown that they delivered the
said goods without any special route designated and the effect
of such delivery being that the defendant might ship the goods in
accordance with the usual course of business.   Affirmed.

The jury returned a verdict for defendant, upon which judg-
ment was entered; and plaintiffs took this writ, assigning for er-
ror the action of the court: (1) In refusing to affirm plaintiffs'
points and in affirming defendant's first and third points; (2)
in charging the jury that under the course of business between
plaintiffs and defendant the bill of lading constituted the con-
tract between them.   This was a question of fact for the jury to
determine; (3) in charging the jury that the sending the dray
ticket was a revocation of the telephone contract; (4) in charg-
ing that the bill of lading gave defendant the option of shipping
by any proper route; (5) in refusing to allow counsel for plain-
tiffs to address the jury except on the one question, *viz.,* whether
defendant delivered the goods to the steamboat company in good
order.

*Albert H. Clarke,* for plaintiffs in error.—A bill of lading is
not such a complete contract as to exclude all testimony to mod-
ify or change it.   On its face it is but a memorandum, and not

in form a contract *inter partes.*    Baltimore & P. S. B. Co. v. Brown, 54 Pa. 77.

The fact that a railroad company gives a shipper a bill of lading when the goods are delivered does not preclude the shipper, in an action against the railroad company as a common carrier, from showing (when such is the fact) that the bill of lading does not express the terms of the transportation contract.    Mobile & M. R. Co. v. Jurey, 111 U. S. 584, 28 L. ed. 527, 4 Sup. Ct. Rep. 566.

*Johns McCleave* for defendant in error.

PER CURIAM:

The exceptions in this case are confined to the charge of the court.    After examining that charge with the shipping bill, we are constrained to say that the assignments of error cannot be sustained.    The charge contains a sound and clear exposition of the law governing the controversy; and as our comments can add nothing to its value we abstain from a useless labor.

Judgment affirmed.