# John J. Keller *v.* The Baltimore & Ohio Railroad Company, Appellant.

*Common carriers—Limitation of liability—Connecting road—Burden of proof.*

In an action of assumpsit against a carrier, where the liability of the carrier ceased at its freight station, under the written contract, and no negligence was alleged up to that point, and the goods were then and there delivered to a connecting company, in order to a recovery, the burden is upon the plaintiff to overthrow the written provisions of the contract evidenced by the bill of lading.

*Evidence to vary written contract—Province of court.*

Where attempt is made to set aside or reform a written contract on the ground of fraud, accident or mistake, the parol evidence must not only be of what occurred at the execution of the document, but it must be clear, precise and indubitable in order to carry the case to the jury.

Such evidence is not present where there is the unsupported oath of one of the parties and the opposing and contradictory oath of the other party, together with the words of the document, on the other side; such unsupported oath is not sufficient to justify the reformation of the instrument, and in such case the evidence should not be submitted to the jury.

*Bill of lading—Contract—Best evidence.*

Where the testimony shows a bill of lading signed by the parties, which is not alleged to be incomplete in its terms, the allegations being merely that it is conflicting in its provisions, the rule of law is applicable which declares the writing to be not only the best but the only evidence of the agreement between the parties.

Argued Oct. 18, 1898.    Appeal, No. 215, Oct. T., 1897, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1892, No. 639, on verdict for plaintiff.    Before RICE, P. J., REEDER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed.    Opinion by W. W. PORTER, J.    RICE, P. J., and SMITH, J., dissent.

Assumpsit.    Before AUDENREID, J.

It appears from the record that the action was originally brought in trespass and was subsequently changed by agreement of counsel to assumpsit.    The plaintiff averred that by his agent, James W. Kerr, he made a contract in writing with the defendant whereby the defendant agreed to carry to and deliver at Frankford in the city of Philadelphia a car containing twenty horses, and that the defendant delivered the car of horses to the North Philadelphia Drove Yard instead of Frankford.    Plaintiff averred that the nonfulfilment of the contract was due to defendant's negligence.    Defendant filed a plea of non assumpsit.    On issue joined verdict was rendered for plaintiff in the sum of $827, which upon appeal taken to the Supreme Court was reversed and a venire facias de novo awarded.    See 174 Pa. 62.    Upon a second trial the evidence taken at the former trial was read to the jury like a series of depositions by agreement of counsel.

Other facts sufficiently appear in the opinion of the court.

The court refused the request for binding instructions for defendant.

Verdict and judgment for plaintiff for $726.06.    Defendant appealed.

*Error assigned* among others was (1) in refusing to affirm defendant's point and charge as requested that, "under all the evidence the verdict in this case must be for the defendant." Errors were also assigned to refusal of other points of defendant, to the affirmance of certain points of plaintiff and to portions of the judge's charge.

*W. B. Linn* and *W. H. Addicks,* for appellant.—It is the settled rule of law in this state and throughout the United States in the absence of special statute that where a shipment is accepted by a railway company, and billed to a point beyond

the terminus of its line, the company's responsibility as a common carrier ceases at the terminus of its line, and the company then becomes the forwarding agent of the shipper only. This principle applies in all cases where the bill of lading is silent upon the subject, and is varied only when a special contract arising from express words or by necessary implication exists between shipper and carrier: Jenneson v. Railroad Co., 4 Am. Law Reg. O. S. 234; s. c. 5 Clark, 409; Penna. R. Co. v. Berry, 68 Pa. 272; Empire Transportation Co. v. Wallace, 68 Pa. 302; Camden and Amboy R. R. Co. v. Forsyth, 61 Pa. 81.

In this case the contract was not only not silent upon the question of responsibility, but expressly stipulates that there should be no responsibility beyond the terminus of defendant's line except as a forwarding agent of the shipper : Keller v. Railroad Co. 174 Pa. 62.

The opinion of Judge STROUD in Jenneson v. R. R. Co., and the editor's comment upon the case in 4 Am. Law Reg. O. S. 234; s. c. 5 Clark, 409, review the leading cases in England and America to the date of the decision (1856) showing the difference between the rule adopted by the English courts and the rule followed by the American judges. In England the doctrine of Muschamp's case prevails. Muschamp v. the Lancaster and Preston Junction Ry. Co., 8 Meeson & Wells, 421, that where a common carrier receives a package marked with its destination, but does not by positive agreement limit his responsibility to part only of the distance, the carrier undertakes prima facie to carry the parcel to its destination, and that although such destination is beyond the limits to which the carrier professed to carry. The rule was approved in Watson v. Ambergate, Nottingham & Boston Ry. Co., 3 Eng. Law & Eq. 497. In America the rule is the exact reverse of the English rule, the Supreme Judicia Court of Massachusetts holding in Nutting v. Conn. River R. R. Co., 67 Mass. 502, that in order to bind a common carrier. or the safe carriage of goods billed beyond the terminus of its line, the burden is upon the plaintiff to show a special undertaking by the carrier to carry the goods beyond the terminus of its own railway. Judge STROUD, of the district court of Philadelphia, in Jenneson v. R. R. Co., supra, followed the rule adopted by the Massachusetts court and held that " When goods are delivered to a carrier, marked

for a particular place, but unaccompanied by any other directions for their transportation and delivery except such as might be inferred from the marks themselves, the carrier is only bound to transport and deliver them according to the established usage of the business in which he is engaged, whether that usage were known to the party from whom they were received or not."

It must therefore be admitted to be the law of Pennsylvania that, in the absence of a special contract established by express words or necessary implication that a carrier agreed to make himself responsible beyond the terminus of his own line, he is from that terminus the forwarding agent of the shipper.

*Charles F. Linde,* for appellee.—There are but two questions raised by the record in this case : (1) Did the appellant railroad company agree to carry the carload of horses beyond its terminus ?   (2) If it did, was it negligent in doing so ?

Assuming for argument's sake that this bill of lading is ambiguous in its terms the Supreme Court has held that " a bill of lading is not such a complete contract as to exclude all testimony of what is not expressed and necessary to a complete contract.   It is but a memorandum of a contract : " Balt. S. B. Co. v. Brown, 54 Pa. 77.

The question as to whether the destination of horses was the freight station of the Baltimore and Ohio at Philadelphia, or Frankford, was one of fact and was properly left to the jury.

When a common carrier receives goods, the question whether the carrier contracts to carry the goods to their destination, or only to deliver them safely to the next carrier at the point nearest or most convenient to the destination is one of fact for the jury, dependent upon the circumstances : Phila. & R. R. R. v. Ramsey, 89 Pa. 474; Keller v. Balt. R. R., 174 Pa. 62.

In answer to the argument presented by the appellant the appellee can only say that the cases cited by the appellant are authorities upon the general proposition of laws, that a carrier's responsibility ceases at the terminus of its line, about which there is no dispute, but they do not apply to the case at bar.

He admits that the doctrine is varied when a special contract arising from express words, or by necessary implication exists between shipper and carrier, and cites Jenneson v. Railroad

Co., 5 Clark, 409; Penna. R. Co. v. Berry, 68 Pa. 272; Empire
Co. v. Wallace, 68 Pa. 302; Camden & Amboy v. Forsyth, 61
Pa. 81.

While the printed part of the contract says that the railroad
company shall not be responsible beyond its terminus, the writ-
ten portion of the contract distinctly declares that the horses
shall be delivered at Frankford, and this is admitted by appel-
lant.   The portion of the opinion of FELL, J., as cited by the
appellant, is garbled for the purpose of sustaining the general
proposition of nonliability of the railroad company.

Mr. Justice FELL gives the exact reason for the reversal of
the judgment obtained at the first trial.   He says: "It was left
to the jury to determine whether there had been fault on the
part of the company in the manner of transportation or unnec-
essary delay which resulted in injury to the plaintiff's horses.
This submission included but one of the questions raised at the
trial. . . . The question of the defendant's responsibility be-
yond the terminus of its line was thus raised at the trial, and
is now presented by the ninth assignment of error."

Nothing was contradicted by the oral evidence admitted here:
Balt. & Phila. S. B. Co. v. Brown, 54 Pa. 77.

OPINION BY WILLIAM W. PORTER, J., April 24, 1899:

This case has been twice tried.   On the first trial, the only
question of fact left to the jury was "whether there had been
fault on the part of the defendant company in the manner of
transportation or unnecessary delay, which resulted in injury to
the plaintiff's horses."   The case went to the Supreme Court,
and is reported in 174 Pa. 62.   It was there held that the ques-
tion submitted was but one of those raised, and that the ques-
tion of the defendant's responsibility, beyond the terminus of
its line, should have been passed upon.   Mr. Justice FELL, in
delivering the opinion of the court, said: "Prima facie, the duty
of the defendant, as a carrier, ended when the horses were ten-
dered to the agent of the consignee, at 24th and Race streets,
and from that time, its responsibility was that of a forwarder
only: Camden and Amboy R. R. v. Forsyth, 61 Pa. 81.   If this
contract was so modified, by agreement of the agents of the par-
ties at the time of the shipment, as to impose on the defendants
liability as carriers beyond its station, it was for the plaintiff to

establish that fact by proof. The testimony relating to this was for the jury. It could not be assumed that it had been established, and in the absence of satisfactory proof upon the subject, the plaintiff was not entitled to recover." The case then went back for trial. The evidence taken at the former trial was read to the jury. No additional testimony was adduced. Upon this state of facts the learned judge of the court below was of opinion that the evidence in the cause required him, under the opinion of the Supreme Court, to leave to the jury the question whether the carrier's liability, fixed by his written contract, was by the oral testimony extended beyond the terminus of the line. We think he misconstrued the opinion of the Supreme Court. The learned trial judge was not justified in ignoring the character and quantum of the oral testimony, which was presented to vary the terms of the written contract between the parties. Mr. Justice FELL distinctly holds that "in the absence of satisfactory proof upon the subject, the plaintiff was not entitled to recover." At the former trial, the question was ignored in the consideration of the case, as appears by the opinion. The case was sent back, not that the evidence should certainly go to the jury under any and all circumstances, but that the question should be passed upon. Therefore, the new venire was awarded. We think, that in view of the points of charge presented, it was the duty of the trial judge to examine and pass upon the question, whether the evidence submitted was sufficient to warrant the submission to the jury of the question above stated. Holding these views, and being confronted by a large number of assignments of error pointedly raising the question, we have given to the point involved a careful and critical examination.

The action was originally brought in trespass, and was, by agreement of counsel, changed to assumpsit. Appended to the statement of claim is a copy of the written agreement entered into between the parties. By it the horses were consigned: " J. J. Keller, Frankford, Philadelphia, Pa.," as stated in that portion of the bill of lading, which is generally known as the receipt. Then follow, inter alia, these stipulations, which express the contractual obligations of the parties : " Consigned as above, to be transported by said company to the freight station, Philadelphia, Pa., ready to be delivered to the consignee, or his order, or to such company or carrier (if the same is to be forwarded beyond such station) whose line may be considered a

part of the route to the destination of said stock, (it being distinctly understood that the responsibility of the Baltimore and Ohio Railroad Company, as carrier, shall cease at the aforesaid freight station when delivered, or when ready to be delivered to such consignee, owner or carrier) upon the following terms and conditions, which are admitted to be, and accepted by the shipper and owner as just and reasonable. . . . Sixth. When necessary to transport said stock to point of destination over the line of any other carrier or carriers, delivery of the same to such other carrier or carriers may be made, and, in receiving the same for transportation, all the terms and conditions hereof shall enure to and be binding on such carrier as if originally made with them, and one carrier shall not be liable for the fraud or negligence of the other," etc.

There is no evidence in the cause which fixes liability upon the defendant company for negligence up to the arrival of the live stock at the freight station of the defendant company in Philadelphia. Delivery was there tendered to the representative of the shipper, who accompanied the stock. He declined to accept it, and demanded that the stock be carried to Frankford. Thereupon it was delivered to the Phila. & Reading R. R. Co., the connecting carrier in line to destination. While in their hands, the acts complained of as negligence seem to have been committed.

Under the written contract of carriage, the liability of the defendant company, as carriers, ceased at the freight station in Philadelphia. Mr. Justice FELL has determined this by saying: " The written contract of shipment was to carry the horses to the freight station, in Philadelphia, Pa. . . . Prima facie, the duty of the defendant, as a carrier, ended when the horses were tendered to the agent of the consignee, at 24th and Race streets, and from that time its responsibility was that of a forwarder only." The plaintiff thus is in the position of having a written contract which bound the defendant company, as carriers, only to their freight station at Twenty-fourth and Race streets, Philadelphia. No negligence was alleged to have been committed up to that point. It became necessary, therefore, in order to a recovery, to overthrow the written provisions of the contract. To do this, oral testimony was produced.

Assuming that oral testimony was admissible, we find but one witness who testified for the plaintiff to what transpired at

the execution of the contract. The witness, Kerr, who was in charge of the live stock, testifies thus: "Q. Detail the entire conversations you had with the railroad agent at Belpre when you shipped these horses and he gave you this bill of lading. What did he say to you? A. He gave me that bill of lading and said, 'You will have to sign this before you start.' I said, 'All right.' I said, 'You are sure you will get us there?' He, 'Oh, yes, that is what we are here for, to get you there.' Q. Be sure to get where? A. At Frankford. I asked him what time he expected to get me there. He said, 'I think we will get you there this evening.' I said, 'That is running pretty lively, isn't it?' He said, 'That is the way we run on this road.' Q. He assured you he would get you to Frankford? A. That is where we were going—to Frankford. Q. Was that all that was said between you two? A. We just talked in that way. That is about all that I remember of. Q. Then he gave you a bill of lading and you signed it? A. I signed it; yes, sir. Q. He did not say anything about Frankford? A. I said, 'I want these horses to get to Frankford.' He said, 'Yes, I understand that.'" This is all the testimony for the plaintiff upon this point. Such evidence is clearly insufficient to reform the written contract. For this purpose the evidence must be strong enough to justify a chancellor in ordering the reformation, and the rule is that a chancellor in such a case invariably refuses to decree on the uncorroborated testimony of a single witness: Phillips v. Meily, 106 Pa. 536; Brawdy v. Brawdy, 7 Pa. 157. We do not find in this case any evidence in corroboration sufficient to justify a reformation of the written contract, on the testimony of this one witness, especially when met by contradiction as hereinafter shown. It is to be further noticed that not only is the quantum of the proof of the plaintiff deficient, but the character of it as well. Nowhere does the witness say that the defendant agreed to be liable, as carriers, to Frankford, or beyond the terminus of the line. No words are used which can fairly be said to bear that construction. In Penna. R. R. v. Berry, 68 Pa. 272, where there was no written contract, Mr. Justice AGNEW holds, that while a carrier may bind himself to transport beyond the terminus of his own route, the proof of the contract must be clear, and " especially should this be the rule when the alleged contract would contradict the papers accompanying the transaction."

Where attempt is made to set aside or reform a written contract on the ground of fraud, accident or mistake, the parol evidence must not only be of what occurred at the execution of the document, but it must also be clear, precise and indubitable, in order to carry the case to the jury: Martin v. Berens, 67 Pa. 459; Murray v. R. R., 103 Pa. 37. Such evidence is not present in this case.

Again, the testimony of the agent of the defendant company, at Belpre, who says that he prepared the bill of lading, is in contradiction of the testimony of the plaintiff's witness. The former says: " A. I did not put Frankford in the bill of lading. . . . We had an original bill, and I did not know where Frankford was, and I asked the gentleman, and he said, Frankford was in Philadelphia. I just simply put Philadelphia in the bill of lading. . . . Q. When you asked Mr. Kerr where Frankford was, he said in Philadelphia? A. I understood him to say Frankford was in Philadelphia. Q. And you filled out Philadelphia? A. Yes, sir. The original reads 'Philadelphia.' "

In Jackson v. Payne, 114 Pa. 67, it was held that if there is but the unsupported oath of one of the parties to the document on one side, and the opposing and contradictory oath of the other party, together with the words of the document, on the other side, such unsupported oath is not sufficient to justify the reformation of the instrument, and in such case, the evidence should not be submitted to the jury. See also Sylvius v. Kosek, 117 Pa. 67, Hoffman v. R. R. Co., 157 Pa. 174, 196, Wykoff v. Farree, 168 Pa. 261, Dickson v. Manufacturing Co., 179 Pa. 343, and Juniata Building Assn. v. Hetzel, 103 Pa. 507.

It is contended that the oral evidence was admissible because of an apparent conflict between the written destination given in the receipt and the printed provisions of the bill of lading containing the contractual stipulations. This is not sound. The mere naming of a destination beyond the carriers' line, does not impose a liability as carriers beyond the terminus of their line: Camden & Amboy R. R. v. Forsyth, 61 Pa. 81; American Express Co. v. The Bank, 69 Pa. 394; Union Express Co. v. Shoop, 85 Pa. 325, and in view of the clear provisions of the contract excluding liability beyond their own line, there was no conflict in terms to be explained.

True, it is said, in B. & P. Steamboat Co. v. Brown, 54 Pa. 77, that a bill of lading is not such a complete contract as to

exclude all testimony of what is not expressed and necessary to a complete contract, and that on its face it is but a memorandum, and not in form a contract inter partes. But Mr. Justice THOMPSON adds, that "what it clearly expresses may not be contradicted by oral testimony." Under the forms of bills of lading, adopted since the writing of that opinion, it may be doubted whether the view, that a bill of lading is not a complete contract, would be adhered to. This may be asserted with the more confidence in view of the decisions of the Supreme Court of the United States and of many of the states (4 Am. & Eng. Ency. of Law, [2d ed.] 536), and particularly in view of the case of Hostetter v. B. & O. R. R., 11 Atl. Rep. 609, decided by the Supreme Court of Pennsylvania, where the following point of charge was refused: "That a bill of lading on its face is but a memorandum and not in form a contract inter partes, and oral testimony may be received to show the real contract." This, it will be observed, is the language of Steamboat Co. v. Brown, supra. The point was refused. The refusal was assigned for error and the assignment was not sustained. But we have, in this case, a document which the testimony shows to have been signed by the agents of the parties, and which is not alleged to be incomplete in its terms,—the allegations being that it does not contain the real agreement, and that it is conflicting in its provisions.

We conclude by applying the language of Mr. Justice WILLIAMS, in Martin v. Berens, supra: "Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement, and we are not disposed to relax the rule."

We sustain the first assignment of error, which is to the refusal of the court below to direct a verdict for the defendant.

Judgment reversed.

RICE, P. J., and SMITH, J., dissenting:

It seems to us that the question whether there was an agreement which imposed on the defendant a liability as a carrier to Frankford was for the jury: Keller v. R. R. Co., 174 Pa. 62; Baltimore Steamship Co. v. Brown, 54 Pa. 77. We are therefore unable to concur in the conclusion reached by the majority upon the first assignment of error.